# IN THE SUPREME COURT OF TEXAS

═══════════
No. 15-0073
═══════════

KEN PAXTON, ATTORNEY GENERAL OF TEXAS, PETITIONER,

v.

CITY OF DALLAS, RESPONDENT

═══════════════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURTS OF APPEALS FOR THE THIRD AND THIRTEENTH DISTRICTS OF TEXAS
═══════════════════════════════════════════════════════

**Argued September 14, 2016**

JUSTICE GUZMAN delivered the opinion of the Court, in which CHIEF JUSTICE HECHT, JUSTICE GREEN, JUSTICE WILLETT, JUSTICE LEHRMANN, JUSTICE DEVINE, and JUSTICE BROWN joined.

JUSTICE BOYD filed a dissenting opinion, in which JUSTICE JOHNSON joined.

Recognizing that government is founded on the authority of the people and "instituted for their benefit,"[1] the Texas Public Information Act (PIA) favors an open and transparent government to ensure the people "retain control over the instruments they have created."[2] But the PIA simultaneously recognizes that public interests are best advanced by shielding some information

---

[1] TEX. CONST. art. I, § 2.

[2] TEX. GOV'T CODE § 552.001(a).

from public disclosure.[3] The Legislature, in its considered judgment, has excepted from disclosure more than sixty categories of information, including information protected by the attorney-client privilege.[4] The issue in this case is whether the governmental body must disclose its attorney-client-privileged communications even though the parties agree the information is categorically excepted from public disclosure under the Act. The controversy exists because (1) the governmental body missed a ten-business-day statutory deadline to request a Texas Attorney General decision affirming a categorical exception to disclosure applies,[5] and (2) an untimely request for an attorney general decision gives rise to a presumption that the information must be disclosed absent a "compelling reason to withhold the information."[6] The crux of our inquiry concerns the meaning of "compelling reason."

The PIA does not define, delineate, or restrict the reasons that may be "compelling" enough to withhold requested information following an untimely request for a decision. As a statutory-construction issue of first impression, we must therefore determine whether the interests protected and advanced by the attorney-client privilege are imperative enough to overcome the public's interest in having governmental bodies promptly request a determination from the attorney general's office when they seek to protect confidential information from public-information requests. In other words, we must ascertain whether the PIA mandates public dissemination of otherwise

---

[3] *See id.* §§ 552.101-.156.

[4] *Id.*

[5] *See id.* § 552.301.

[6] *See id.* § 552.302.

2

confidential attorney-client communications solely because a governmental body missed a statutory deadline.

We hold that, absent waiver, the interests protected by the attorney-client privilege are sufficiently compelling to rebut the public-disclosure presumption that arises on expiration of the PIA's ten-day deadline. The attorney-client privilege reflects a foundational tenet in the law: ensuring the free flow of information between attorney and client ultimately serves the broader societal interest of effective administration of justice.[7] The Legislature's choice to exempt information protected by the attorney-client privilege embodies the fundamental understanding that, in the public sector, maintaining candid attorney-client communication directly and significantly serves the public interest by facilitating access to legal advice vital to formulation and implementation of governmental policy. Full and frank legal discourse also protects the government's interest in litigation, business transactions, and other matters affecting the public.[8] Depriving the privilege of its force thus compromises the public's interest at both discrete and systemic levels.[9]

Because failing to meet the PIA's deadline to assert a statutory exception to disclosure does not, in and of itself, constitute waiver of the attorney-client privilege, requested information does not automatically lose its confidential status and is not subject to compelled disclosure under the PIA

---

[7] *See Ford Motor Co. v. Leggat*, 904 S.W.2d 643, 647 (Tex. 1995).

[8] *See In re Cty. of Erie*, 473 F.3d 413, 418-19 (2d Cir. 2007).

[9] *See, e.g.*, *In re Grand Jury Investigation*, 399 F.3d 527, 534 (2d Cir. 2005).

3

solely on that basis.  We therefore affirm the lower-court judgments holding the attorney-client confidences at issue need not be disclosed to the public-information requestors.

## I. The Texas Public Information Act's Requirements

The PIA embodies the State's policy that "each person is entitled, unless otherwise expressly provided by law, at all times to complete information about the affairs of government and the official acts of public officials and employees."[10]

Under the PIA, the public has a right of access to "public information,"[11] a broadly defined term.[12]  A governmental body must "promptly" produce public information after receiving a request for disclosure, meaning "as soon as possible under the circumstances, that is, within a reasonable time, without delay."[13]  The prompt production of public information furthers the "fundamental philosophy" that "government is the servant and not the master of the people."[14]

The right to access is not absolute, however; the Legislature incorporated into the PIA more than sixty exceptions to the public-disclosure requirement.[15]  Statutory exceptions range from very broad to more specific categories of information, including "information considered to be

---

[10] TEX. GOV'T CODE § 552.001(a).

[11] Id. § 552.021.

[12] Id. § 552.002(a) ("Public information" means "information that is written, produced, collected, assembled, or maintained under a law or ordinance or in connection with the transaction of official business" by a governmental body, by its employees or officers in their official capacity if the information pertains to official business of the governmental body, or "for a governmental body" if it owns, has a right of access to, or spends or contributes public money for the purpose of writing, producing, collecting, assembling, or maintaining the information).

[13] Id. § 552.221(a).

[14] Id. § 552.001(a).

[15] Id. §§ 552.101-.156.

4

confidential by law, either constitutional, statutory, or by judicial decision,"[16] attorney-client information,[17] certain rare books and original manuscripts,[18] various categories of records containing personal information of public employees or private citizens,[19] and sensitive crime-scene images.[20] "[The PIA's] exceptions embrace the understanding that the public's right to know is tempered by the individual and other interests at stake in disclosing that information."[21]

Consistent with the PIA's fundamental precept that "[t]he people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know,"[22] a governmental body cannot unilaterally determine that requested information is exempt from disclosure. Rather, a governmental body must request a decision from the Texas Attorney General confirming the claimed exception applies to the requested information, unless the Attorney General has previously made a determination that the information falls within a claimed exception.[23]

In harmony with the policy underlying the PIA's prompt-production requirement, the governmental body asserting an exception to disclosure must request an attorney general decision

---

[16] *Id.* § 552.101.

[17] *Id.* § 552.107.

[18] *Id.* § 552.120.

[19] *E.g.*, *id.* §§ 552.102, .114, .115, .117, .1176, .1235, .124.

[20] *Id.* § 552.1085.

[21] *Tex. Dep't of Pub. Safety v. Cox Tex. Newspapers, L.P.*, 343 S.W.3d 112, 114 (Tex. 2011).

[22] TEX. GOV'T CODE § 552.001(a).

[23] *Id.* § 552.301(a).

"within a reasonable time but not later than the 10th business day after the date of receiving the written request."[24] If a request for decision is untimely, "the information requested in writing is presumed to be subject to required public disclosure and must be released *unless there is a compelling reason to withhold the information*."[25]

To secure compliance with the statute, the PIA provides civil-enforcement mechanisms when a governmental body "refuses to request an attorney general's decision" or "refuses to supply public information or information that the attorney general has determined is public information that is not excepted from disclosure."[26] In such cases, either the requestor or the Attorney General can institute mandamus proceedings to compel access to the information.[27] The PIA further authorizes certain local or state officials to seek declaratory or injunctive relief based on a complaint by "a person who claims to be the victim of a [PIA] violation," but only after the governmental body is afforded notice and fails to timely cure the alleged violation.[28] Subject to limited exceptions, the trial court shall award costs of litigation and reasonable attorney fees to a plaintiff who substantially prevails in a civil-enforcement suit against the governmental body.[29]

---

[24] *Id.* § 552.301(b).

[25] *Id.* § 552.302 (emphasis added).

[26] *Id.* § 552.321(a).

[27] *Id.*

[28] *Id.* § 552.3215.

[29] *Id.* § 552.323(a).

6

The PIA also provides criminal penalties for (1) destruction, removal, or alteration of public information, (2) distribution or misuse of "information considered confidential under the [PIA's] terms," and (3) criminally negligent failure to provide access to or copies of public information.[30]

In comparison, "[t]he only suit a governmental body may file seeking to withhold information from a requestor is a suit . . . seek[ing] declaratory relief from compliance with [an attorney general] decision."[31] Attorney fees and costs may be awarded to a party who substantially prevails in a suit instituted by a governmental body.[32]

## II. The Dispute

In this consolidated appeal, the City of Dallas seeks relief from two attorney general decisions concluding the City must disclose confidential attorney-client communications pursuant to public-information requests the City received regarding the McCommas Bluff Landfill (the Landfill case) and a convention-center hotel (the Hotel case). The parties agree the requested information constitutes "public information" under the PIA, but because the information is undisputedly subject to the attorney-client privilege, the City contends the information is excepted from disclosure under PIA sections 552.101 (the confidential-by-law exception) and 552.107 (the attorney-client exception).

Section 552.107 applies to "information that the attorney general or an attorney of a political subdivision is prohibited from disclosing because of a duty to the client under the Texas Rules of

---

[30] *Id.* §§ 552.351-.353.

[31] *Id.* § 552.324(a).

[32] *Id.* § 552.323(b).

7

Evidence or the Texas Disciplinary Rules of Professional Conduct."[33] Section 552.101 applies to "information considered to be confidential by law, either constitutional, statutory, or by judicial decision."[34] According to the City, section 552.101 encompasses the attorney-client privilege because the privilege derives from the common law and is also memorialized in judicially promulgated rules.

The parties agree the PIA excepts attorney-client communications from public disclosure, although they disagree about whether protection is afforded under the confidential-by-law exception or the attorney-client exception. The dispute is not about whether the PIA excepts the requested information from public disclosure—the parties agree it does. Nor does the City contend that it may unilaterally make that determination. Rather, the dispute arises because the City failed to *timely* request an attorney general decision affirming that the information falls within one of the asserted exceptions, as required by section 552.301 of the PIA.

---

[33] *Id.* § 552.107. The evidence and professional-conduct rules "expressly deem certain attorney-client communications to be 'confidential.'" *In re City of Georgetown*, 53 S.W.3d 328, 333 (Tex. 2001) (orig. proceeding). Texas Rule of Evidence 503(a)(5) defines a communication as "confidential" if it is "not intended to be disclosed to third persons other than those to whom disclosure is made to further the rendition of professional legal services to the client; or reasonably necessary to transmit the communication." Under Rule 503(b), a client "has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made to facilitate the rendition of professional legal services to the client," subject to limited exceptions. Texas Disciplinary Rule of Professional Conduct 1.05(b) imposes a duty of confidentiality and prohibits a lawyer from knowingly revealing confidential information. Rule 1.05(a) defines "[c]onfidential information" to include "privileged information" that is protected by Texas Rule of Evidence 503 and "unprivileged client information." The Attorney General has ruled that information considered confidential solely under Rule 1.05—including "unprivileged client information"—is not considered confidential under the PIA because Rule 1.05 "permit[s] disclosure of client information '[w]hen the lawyer has reason to believe it is necessary to do so in order to comply with . . . other law.'" Tex. Att'y Gen. Op. ORD-676 at 2 (2002) (quoting TEX. DISCIPLINARY R. PROF'L CONDUCT 1.05(c)(4)). The Attorney General has thus concluded that "a governmental body's information that is otherwise made confidential *solely* under rule 1.05 is subject to the rule's 'other law' exception to confidentiality when it is requested under the [PIA]." *Id.* This case does not involve unprivileged information protected from disclosure under Rule 1.05.

[34] TEX. GOV'T CODE § 552.101.

8

The City requested an attorney general decision twenty-six business days after receiving the written request in the Landfill case and forty-nine business days after receiving the request in the Hotel case. The City's proffered reason for the delay was inadvertence.[35] Because the requests for an open-records ruling were untimely, the City concedes the requested information is presumed to be subject to disclosure unless "a compelling reason to withhold the information" exists.[36] Thus, the determinative issue is whether the City met its burden to rebut the public-disclosure presumption in section 552.302 that was triggered when the City failed to timely seek an attorney general decision.

The City asserts a number of statutory exceptions to disclosure and adamantly argues that important policies underlying the attorney-client privilege present a compelling reason to withhold disclosure of confidential attorney-client communications. The City also claims a compelling reason to withhold the requested landfill information because disclosure would prejudice its bargaining position in a long-term transaction with millions of dollars at stake.

Though attorney-client communications are not intended to be freely accessible to the public under the PIA or available to third parties in proceedings outside the PIA, the Attorney General determined the City must release the requested information.[37] The Attorney General's letter rulings were based on agency precedent limiting the "compelling reason" standard to (1) information falling under an exception the Attorney General considers to impose "mandatory" confidentiality, meaning

---

[35] The City did not assert a reason for the untimeliness in proceedings below, but at oral argument before this Court, the City's attorney said "we missed the deadlines in both of these instances. It was inadvertence I believe. There's . . . nothing in the record to indicate anything else." Oral Arg. No. 15-0073, 2016 WL 4992647, at *6 (Tex. Sept. 14, 2016).

[36] *See* TEX. GOV'T CODE § 552.302.

[37] *See* Tex. Att'y Gen. OR2008-08859 (Hotel case); Tex. Att'y Gen. OR2010-08285 (Landfill case).

the governmental body is *prohibited* by law from disclosing the information and could not voluntarily disclose the information without being criminally sanctioned under the PIA,[38] and (2) information that could jeopardize third parties if disclosed.[39] The latter circumstance is not implicated by the public-information requests at issue, and the Attorney General asserts the former does not apply because the attorney-client privilege can be waived voluntarily, making confidentiality "discretionary," not "mandatory." Taking a constrained view of the statutory language, the Attorney General has determined that the mere *ability* to waive the attorney-client privilege automatically and categorically precludes the privilege from constituting a compelling reason to withhold confidential attorney-client communications, even if the privilege has not *actually* been waived. Accordingly, the Attorney General ruled that neither the confidential nature of

---

[38] According to the Office of the Attorney General, mandatory exceptions include the confidential-by-law exception and those covering information made confidential under the PIA, including sections 552.102 ("Confidentiality of Certain Personnel Information"), .109 ("Confidentiality of Certain Private Communications of an Elected Office Holder"), .110 ("Confidentiality of Trade Secrets; Confidentiality of Certain Commercial or Financial Information"), .113 ("Confidentiality of Geological or Geophysical Information"), .114 ("Confidentiality of Student Records"), .115 ("Confidentiality of Birth and Death Records"), .117 ("Confidentiality of Certain Addresses . . . and Personal Family Information"), .118 ("Confidentiality of Official Prescription Program Information"), .119 ("Confidentiality of Certain Photographs of Peace Officers"), .120 ("Confidentiality of Certain Rare Books and Original Manuscripts"), .121 ("Confidentiality of Certain Documents Held for Historical Research"), .123 ("Confidentiality of Name of Applicant for [CEO] of Institution of Higher Education"), .124 ("Confidentiality of Records of Library or Library System"), .126 ("Confidentiality of Name of Applicant for Superintendent of Public School District"), .131 ("Confidentiality of Certain Economic Development Information"), .133 ("Confidentiality of Public Power Utility Competitive Matters"), .134 ("Confidentiality of Certain Information Relating to Inmate of Department of Criminal Justice"), .135 ("Confidentiality of Certain Information Held by School District"), .136 ("Confidentiality of Credit Card . . . Numbers"), .138 ("Confidentiality of Family Violence Shelter Center . . . Information"), .139 ("Confidentiality of Government Information Related to Security or Infrastructure Issues for Computers"), .140 ("Confidentiality of Military Discharge Records"), .142 ("Confidentiality of Records Subject to Order of Nondisclosure"), .145 ("Confidentiality of Texas No-Call List"), .148 ("Confidentiality of Certain Personal Information Maintained by Municipality Pertaining to a Minor"), .151 ("Confidentiality of Information Concerning Information Regarding Select Agents"). *See* OFFICE OF THE ATTORNEY GENERAL, PUBLIC INFORMATION HANDBOOK 42-43 & n.158 (2016) (citing Act of May 30, 2011, 82d Leg., R.S., ch. 1229, §§ 3-21, 23-26, 28-37).

[39] *E.g.*, Tex. Att'y Gen. ORD-677 at 10 (2002).

attorney-client communications nor the City's particularized allegation of prejudice to its business interests constitutes a compelling reason to withhold the requested information.

The City challenged the letter rulings in separate trial-court proceedings and achieved conflicting results. In the Hotel case, the trial court held the City did not have a compelling reason to withhold the requested information. But in the Landfill case, the trial court found the information is excepted from required public disclosure, explaining the attorney-client privilege is an inherently "compelling reason to withhold information" because it is vital to our adversarial system of justice and no authority supports compelling disclosure of information protected by the attorney-client privilege based solely on a missed deadline.[40] The City and the Attorney General appealed the respective adverse rulings.

In the Landfill case, a divided Third Court of Appeals affirmed the trial court's judgment in the City's favor, holding attorney-client communications are excepted from disclosure under the confidential-by-law exception and, considering the privilege's purposes and the protections afforded under the law, a compelling reason to withhold the information necessarily exists and rebuts the public-disclosure presumption in section 552.302.[41]

The Hotel case was transferred to the Thirteenth Court of Appeals pursuant to a docket-equalization order. Applying the appellate decision in the Landfill case as precedent,[42] the court

___

[40] *Cf.* TEX. R. CIV. P. 193.3(d) (actual disclosure of privileged information or materials does not waive the privilege absent disclosure with intent to waive the privilege or failure to claim the privilege within ten days after the party actually discovers the disclosure occurred).

[41] 453 S.W.3d 580, 587-88 (Tex. App.—Austin 2015).

[42] *See* TEX. R. APP. P. 41.3 ("[T]he court of appeals to which the case is transferred must decide the case in accordance with the precedent of the transferor court under principles of stare decisis . . . .").

11

reached the same conclusion, reversing the trial court's judgment and rendering judgment for the City.[43]

On appeal to this Court, we consolidated the Attorney General's appeals for argument and disposition.[44]

### III. Discussion

The parties agree that, had the City timely requested an attorney general decision, the PIA does not require public disclosure of attorney-client confidences in either the Landfill or the Hotel case. Nor is there any dispute that the City's untimely requests activated a presumption that the requested information must be disclosed absent a "compelling reason to withhold the information." Thus, the dispositive issue is whether a "compelling reason" exists to rebut the public-disclosure presumption.

The resolution of that issue does not turn on whether the attorney-client privilege falls within one statutory exception or another, or whether confidentiality is at the governmental body's discretion rather than compulsory, as asserted by the Attorney General. Such extra-textual distinctions are not decisive because the statute prescribes "a compelling reason to withhold the information" as the determinative and only standard.[45]

---

[43] 2015 WL 601974, at *5, __ S.W.3d __ (Tex. App.—Corpus Christi 2015).

[44] In this appeal, we have received *amicus curiae* briefs from the Freedom of Information Foundation of Texas, which supports the Attorney General's position; and the Texas Municipal League, Texas City Attorneys Association, and Texas Association of Counties, which are aligned with the City of Dallas.

[45] *See* TEX. GOV'T CODE § 552.302.

12

In resolving the dispute at hand, we affirm that even under the compelling-reason standard, information cannot be withheld unless a statutory exception applies, because public information remains public unless it is expressly excepted from disclosure.[46] But merely establishing an exception cannot always be sufficient to rebut the public-disclosure presumption, because if the statute were so construed, the compelling-reason requirement would be rendered a nullity.

We reject, however, the notion that statutory exceptions are categorically distinct from compelling reasons and that something more is always required to rebut the presumption that arises from a governmental body's failure to timely request an attorney general decision. In some instances, important policies and interests that animate a statutory exception are compelling *in their own right*. We hold the attorney-client privilege, which is protected by one or more statutory exceptions to public disclosure,[47] protects and advances interests that provide independently compelling reasons to withhold privileged information unless confidentiality has been waived.

## A. "Compelling Reason"

The controlling issue in this case involves the proper construction and application of the "compelling reason" standard in section 552.302 of the PIA, which is implicated when a governmental body seeks to withhold information from public disclosure but fails to make a timely

---

[46] *See id.* § 552.001(a) (under the PIA, "each person is entitled, *unless otherwise expressly provided by law*, at all times to complete information about the affairs of government and the official acts of public officials and employees" (emphasis added)); *see also Doe v. Tarrant Cty. Dist. Attorney's Office*, 269 S.W.3d 147, 153-54 (Tex. App.—Fort Worth 2008, no pet.); *Simmons v. Kuzmich*, 166 S.W.3d 342, 350 (Tex. App.—Fort Worth 2005, no pet.).

[47] Because the parties agree the attorney-client exception applies to the requested information, we need not consider whether privileged and confidential attorney-client information is also protected by the confidential-by-law exception. *See* TEX. GOV'T CODE §§ 552.101, .107.

13

request for an attorney general decision.[48] Statutory construction presents a question of law that we determine de novo under well-established principles.[49]

As always, our mandate is to ascertain and give effect to the Legislature's intent as expressed in the statutory language.[50] Further, by statutory directive, we must liberally construe the PIA to promote the policy of open government.[51]

The PIA does not define the phrase "compelling reason" or its constituent terms; accordingly, those words bear their common, ordinary meaning unless a different or more precise definition is apparent from the statutory context or the plain meaning yields an absurd result.[52] Though neither of those qualifying exceptions applies, the Attorney General relies on agency-deference and legislative-ratification doctrines to support a restrictive construction of the compelling-reason standard.

Long before the "compelling reason" safeguard was added to section 552.302, the Attorney General authorized governmental bodies to withhold information from public disclosure despite an untimely request for an open-records decision, if a "compelling reason" or a "compelling

---

[48] *See id.* §§ 552.301-.302.

[49] *TIC Energy & Chem., Inc. v. Martin*, 498 S.W.3d 68, 74 (Tex. 2016).

[50] *Id.*

[51] TEX. GOV'T CODE § 552.001 (demanding liberal construction to implement the state's policy of open government and to favor disclosing information about governmental affairs).

[52] *Greene v. Farmers Ins. Exch.*, 446 S.W.3d 761, 765 (Tex. 2014).

14

demonstration" rebutted the statutory presumption of openness.[53]   But the Attorney General recognized only two circumstances that could satisfy that standard: "[1] the asserted exception is 'mandatory,' *i.e.*, the information is confidential by law and the governmental body therefore is *prohibited* from releasing it, or [2] if the release of the information implicates third party interests."[54] Citing legislative history and relying on agency precedent, the Attorney General asserts the Legislature intended a similarly constrained construction of section 552.302's compelling-reason standard.[55]   As so construed, the Attorney General contends the City cannot rebut the public-disclosure presumption because neither condition exists.

We decline the Attorney General's invitation to import restrictions that alter the plain language of the statute at issue here.  We have long held a statute's unambiguous language controls the outcome.  When a statute is clear and unambiguous, like section 552.302, we do not resort to extrinsic interpretive aids, such as legislative history, "because the statute's plain language 'is the surest guide to the Legislature's intent.'"[56]   Moreover, although we may consider an agency's construction of a statute, "*deferring* to an agency's construction is appropriate only when the

---

[53] *See, e.g.*, Tex. Att'y Gen. ORD-630 at 3 (1994); Tex. Att'y Gen. ORD-552 at 1 (1990); Tex. Att'y Gen. ORD-319 at 1-2 (1982); Tex. Att'y Gen. ORD-150 at 2 (1977); Tex. Att'y Gen. ORD-34 at 2 (1974).

[54] Tex. Att'y Gen. ORD-677 at 10 (2002).  The PIA expressly prohibits a governmental body from releasing information that is "confidential under law" and imposes criminal liability when a person distributes information that is considered confidential under the PIA.  *See* Tex. Att'y Gen. ORD-676 at 2 (2002) (citing TEX. GOV'T CODE §§ 552.007, .352).

[55] *See* Act of May 25, 1999, 76th Leg., ch. 1319, § 21, sec. 552.302, 1999 Tex. Gen. Laws 4500, 4509; *see also* Tex. Att'y Gen. ORD-630 at 3 (1994); Tex. Att'y Gen. ORD-552 at 1 (1990); Tex. Att'y Gen. ORD-319 at 1-2 (1982); Tex. Att'y Gen. ORD-150 at 2 (1977); Tex. Att'y Gen. ORD-34 at 2 (1974).

[56] *Sullivan v. Abraham*, 488 S.W.3d 294, 299 (Tex. 2016) (quoting *Prairie View A&M Univ. v. Chatha*, 381 S.W.3d 500, 507 (Tex. 2012)).

statutory language is ambiguous."[57] In like manner, legislative ratification applies only to ambiguous statutes.[58] We reject the limitations the Attorney General champions because they are not textually supportable. Instead, we must apply the plain meaning of the phrase "compelling reason to withhold the information," which is not as circumscribed as the Attorney General advocates.

The meaning of the term "compelling" is of vital importance to our analysis because it represents a qualitative limitation on the justifications that permit withholding information from public disclosure. Neither *a* reason nor even a *good* reason would be sufficient to rebut the public-disclosure presumption. The reason must be "compelling."

Our examination of dictionaries, treatises, and judicial constructions of similar language[59] reveals the term "compelling" connotes urgency, forcefulness, and significantly demanding concerns. "Compelling" means "[u]rgently requiring attention" and "[d]rivingly forceful";[60] "not able to be resisted; overwhelming" and "not able to be refuted; inspiring conviction";[61] and "calling for

---

[57] *Sw. Royalties, Inc. v. Hegar*, 500 S.W.3d 400, 404 (Tex. 2016); *see also Boeing Co. v. Paxton*, 466 S.W.3d 831, 838 (Tex. 2015) ("While the Attorney General's interpretation of the [PIA] is entitled to due consideration, as with other administrative statutory constructions, such deference must yield to unambiguous statutory language.").

[58] *Tex. Dep't of Protective & Regulatory Servs. v. Mega Child Care, Inc.*, 145 S.W.3d 170, 176 (Tex. 2004) ("If an ambiguous statute that has been interpreted by a court of last resort or given a longstanding construction by a proper administrative officer is re-enacted without substantial change, the Legislature is presumed to have been familiar with that interpretation and to have adopted it."); *see also Pretzer v. Motor Vehicle Bd.*, 138 S.W.3d 908, 915 (Tex. 2004) ("[N]either legislative ratification nor judicial deference to an administrative interpretation can work a contradiction of plain statutory language.").

[59] *See, e.g.*, *Greene v. Farmers Ins. Exch.*, 446 S.W.3d 761, 765 (Tex. 2014) (looking to dictionaries, treatises, and state- and federal-court constructions in similar contexts).

[60] THE AMERICAN HERITAGE DICTIONARY (5th ed. 2016).

[61] NEW OXFORD AMERICAN DICTIONARY (3d ed. 2010).

16

examination, scrutiny, consideration, or thought."[62]  A need is "compelling" if it is "so great that

irreparable harm or injustice would result if it is not met";[63] a reason may be "compelling" if time

is of the essence;[64] a governmental interest "is compelling when the balance weighs in its favor";[65]

and the public interest in maintaining confidentiality of information may be "compelling" if the

interest advanced by the promise of confidentiality would be "eviscerated" by compelled

disclosure.[66]

Though not authoritative, we may, as this Court has often done, look to federal cases for

guidance on the meaning of terms not otherwise defined.[67]  Federal courts have employed a

"compelling reason" standard to determine whether information should be withheld from the public

in an analogous context involving sealing judicial records.[68]  Much like the policies underlying the

---

[62] WEBSTER'S THIRD NEW INT'L DICTIONARY (2002).

[63] BLACK'S LAW DICTIONARY (10th ed. 2014) (defining "compelling need").

[64] *State ex rel. Angelini v. Hardberger*, 932 S.W.2d 489, 490 (Tex. 1996) (holding exigent circumstances present a compelling reason for this Court to exercise discretion to decide a *quo warranto* without prior presentment to the district court).

[65] *Barr v. City of Sinton*, 295 S.W.3d 287, 306 (Tex. 2009); *see also Gonzales v. O Centro Beneficente Uniao do Vegetal*, 546 U.S. 418, 431-32 (2006); BLACK'S LAW DICTIONARY (10th ed. 2014) (defining "compelling-state-interest test" as a method "whereby the government's interest in the law and its purpose are balanced against an individual's constitutional right that is affected by the law").

[66] *Eli Lilly & Co. v. Marshall*, 850 S.W.2d 155, 160 (Tex. 1993).

[67] *See, e.g.*, *Greene v. Farmers Ins. Exch.*, 446 S.W.3d 761, 765 (Tex. 2014).

[68] *Rudd Equip. Co. v. John Deere Constr. & Forestry Co.*, 834 F.3d 589, 593 (6th Cir. 2016) ("'[O]nly the most compelling reasons can justify non-disclosure of judicial records.'" (quoting *In re Knoxville News-Sentinel Co.*, 723 F.2d 470, 476 (6th Cir. 1983))); *U.S. v. Kravetz*, 706 F.3d 47, 59 (1st Cir. 2013) ("'Only the most compelling reasons can justify non-disclosure of judicial records that come within the scope of the common-law right of access.'" (quoting *In re Providence Journal Co., Inc.*, 293 F.3d 1, 10 (1st Cir. 2002))); *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 123 (2d Cir. 2006) ("'[D]ocuments used by parties moving for, or opposing, summary judgment should not remain under seal absent the most compelling reasons.'" (quoting *Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982))); *Kamakana v. City*

17

PIA, a court's discretion to seal records is "bounded by a 'long-established legal tradition' of the 'presumptive right of the public to inspect and copy judicial documents and files.'"[69] To determine whether "compelling reasons" exist to shield information in court records from public exposure, federal courts employ a balancing test, weighing the interest the public has in access to judicial records against the interest of a party seeking to make judicial records confidential.[70]

We similarly conclude that section 552.302's compelling-reason standard requires an assessment of the relative importance of a reason for withholding information in relation to the presumption of openness.[71] In that regard, a reason to withhold information will be "compelling" only when it is of such a pressing nature (e.g., urgent, forceful, or demanding) that it outweighs the interests favoring public access to the information and overcomes section 552.302's presumption that disclosure is required.[72]

---

*& Cty. of Honolulu*, 447 F.3d 1172, 1180 (9th Cir. 2006) (a party seeking to seal "documents attached to a dispositive motion must meet the high threshold of showing that 'compelling reasons' support secrecy" (citing *Foltz v. State Farm Mut. Ins. Co.*, 331 F.3d 1122, 1136 (9th Cir. 2003))).

[69] *Rudd Equip.*, 834 F.3d at 593 (quoting *Knoxville*, 723 F.2d at 474).

[70] *See id.* at 594 ("[I]n making this determination, a court must balance the litigants' privacy interests against the public's right of access, recognizing our judicial system's strong presumption in favor of openness."); *Kravetz*, 706 F.3d at 59 ("[A] court must carefully balance the presumptive public right of access against the competing interests that are at stake in a particular case."); *Nat'l Org. for Marriage v. McKee*, 649 F.3d 34, 70 (1st Cir. 2011) ("Decisions on the sealing of judicial documents require a balancing of interests, although the scales tilt decidedly toward transparency."); *Lugosch*, 435 F.3d at 120 ("[A]fter determining the weight of the presumption of access, the court must 'balance competing considerations against it.'" (quoting *U.S. v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995))); *Kamakana*, 447 F.3d at 1179 ("[T]he court must 'conscientiously balance[] the competing interests' of the public and the party who seeks to keep certain judicial records secret." (quoting *Foltz*, 331 F.3d at 1135)).

[71] *Cf. Gonzales v. O Centro Beneficente Uniao do Vegetal*, 546 U.S. 418, 431-32 (2006) (recognizing that in applying the compelling-interest test "context matters" and "relevant differences" should be taken into account (quoting *Grutter v. Bollinger*, 539 U.S. 306, 327 (2003), and *Adarand Constructor, Inc. v. Peña*, 515 U.S. 200, 228 (1995))).

[72] *See* TEX. GOV'T CODE § 552.302.

18

## B. The Attorney-Client Privilege Protects Significant Interests

Privileges "represent society's desire to protect certain relationships."[73] The attorney-client privilege holds a special place among privileges: it is "the oldest and most venerated of the common law privileges of confidential communications."[74] As "the most sacred of all legally recognized privileges," "its preservation is essential to the just and orderly operation of our legal system."[75]

The privilege rests on "the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out."[76] "[T]he privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice."[77] The privilege's purpose could not be more evident: "to encourage clients to make full disclosure to their attorneys"[78] and, in return, to allow clients to obtain full, fair, and candid counsel.[79] By promoting "full and frank communications between attorneys and their clients," the privilege "promote[s] broader public interests in the observance of law and administration of justice."[80]

---

[73] *Republic Ins. Co. v. Davis*, 856 S.W.2d 158, 163 (Tex. 1993).

[74] *U.S. v. Edwards*, 303 F.3d 606, 618 (5th Cir. 2002).

[75] *U.S. v. Bauer*, 132 F.3d 504, 510 (9th Cir. 1997).

[76] *Trammel v. U.S.*, 445 U.S. 40, 51 (1980).

[77] *Upjohn Co. v. U.S.*, 449 U.S. 383, 390 (1981).

[78] *Fisher v. U.S.*, 425 U.S. 391, 403 (1976).

[79] *See, e.g.*, *Upjohn Co.*, 449 U.S. at 390.

[80] *Id.* at 389.

19

In the governmental context, the attorney-client privilege applies with "special force."[81] "[P]ublic officials are duty-bound to understand and respect constitutional, judicial and statutory limitations on their authority; thus, their access to candid legal advice directly and significantly serves the public interest."[82]

The notion that "sound legal advice or advocacy serves public ends" is not rationally debatable.[83] After all, the government conducts its business on behalf of the public (residents, voters, taxpayers, and ratepayers),[84] and a fully informed servant is a more capable servant. The attorney-client privilege "encourag[es] government officials formulating policies in the public's interest to consult with counsel in conducting that public business."[85] The privilege also protects the public fisc when the government is participating in litigation, negotiating billion-dollar contracts, and performing regulatory acts under complex regulatory schemes.

Fundamentally, the promise of confidentiality fosters "a culture in which consultation with government lawyers is accepted as a normal, desirable, and even indispensable part of conducting

---

[81] *In re Cty. of Erie*, 473 F.3d 413, 419 (2d Cir. 2007) (quoting *In re Grand Jury Investigation*, 399 F.3d 527, 534 (2d Cir. 2005)).

[82] *Id*. at 418-19.

[83] *Upjohn Co.*, 449 U.S. at 389.

[84] *See In re Grand Jury Subpoena Duces Tecum*, 731 F.2d 1032, 1036-37 (2d Cir. 1984) ("[T]he availability of sound legal advice inures to the benefit not only of the client . . . but also of the public which is entitled to compliance with the ever growing and increasingly complex body of public law.").

[85] *Guidiville Rancheria of Cal. v. U.S.*, No. 12-cv-1326 YGR, 2013 WL 6571945, at *2 (N.D. Cal. Dec. 13, 2013).

public business."[86]  And though the dissent dismisses the importance of the privilege in the governmental context as mere hyperbole,[87] affording weight to the policies and interests that drive the privilege's application cannot be disregarded so handily.  At a bare minimum, sound judgment tells us that the people are best served when government officials, "who are expected to uphold and execute the law and who may face criminal prosecution for failing to do so," operate in an atmosphere that encourages them "to seek out and receive fully informed legal advice."[88]

The attorney-client privilege exists—and has been a cornerstone of our legal system for nearly 500 years[89]—because the interests protected and secured by the promise of confidentiality are not merely significant; they are quintessentially imperative.  Safeguarding the privilege is important—indeed, compelling—because the consequences of disclosure are far from inconsequential.  Once information has been disclosed, loss of confidentiality is irreversible.[90]  The bell cannot be unrung, and neither dissemination nor use can be effectively restrained.[91]  Unsurprisingly, the ramifications are not limited to particularized matters, but are also wrought on

---

[86] *Grand Jury Investigation*, 399 F.3d at 534; *see also U.S. v. Jicarilla Apache Nation*, 564 U.S. 162, 169-70 (2011) ("'The privilege aids government entities and employees in obtaining legal advice founded on a complete and accurate factual picture.'" (quoting RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 74 cmt. b (2000))).

[87] *Post* at 3 (BOYD, J., dissenting).

[88] *Grand Jury Investigation*, 399 F.3d at 534.

[89] 8 JOHN H. WIGMORE, EVIDENCE § 2290 (McNaughton rev. 1961) ("The history of [the attorney-client] privilege goes back to the reign of Elizabeth I, where the privilege already appears as unquestioned." (citing *Berd v. Lovelace*, Cary 88, 21 Eng. Rep. 33 (Ch. 1577))).

[90] *See Pearson v. Miller*, 211 F.3d 57, 64 (3d Cir. 2000).

[91] *See Compelling Need*, BLACK'S LAW DICTIONARY (10th ed. 2014) (a need is "compelling" if it is "so great that irreparable harm . . . would result if it is not met").

21

a systemic level.[92]  The PIA recognizes this by categorically excepting privileged information from the public-access requirement.  More to the point, however, significant interests independent of the PIA's exceptions favor withholding confidential and privileged attorney-client communications from compelled disclosure.

Though the precise issue presented in this case is one of first impression under the PIA, analogous authority from this Court confirms that the attorney-client privilege is inherently compelling.  For example, in *In re George*, we examined the attorney-client privilege in a dispute involving the client's access to attorney work product.[93]  After the client's attorneys had been disqualified from representing her based on their prior representation of an opposing party, the client sought possession and control of the attorneys' work product.  We held that maintaining confidentiality of the opponent's attorney-client communications—which had been the basis for the disqualification order—provided a "compelling reason" to deprive the client of her significant property right to the work product generated by her former counsel.[94]

In *Ford Motor Co. v. Leggat*, we considered whether to apply Michigan's more expansive protections of the attorney-client privilege in lieu of Texas's narrower attorney-client privilege in a conflict-of-laws analysis.[95]  We held that "[t]he purpose of the attorney-client privilege and the

---

[92] *See supra* n.89.

[93] 28 S.W.3d 511, 512-13 (Tex. 2000) (orig. proceeding).

[94] *Id.* at 516-20; *see also id.* at 525 (BRISTER, J., dissenting) ("I agree with the Court that Ms. Anderson should not be deprived of her property without a compelling reason, but attorney-client confidentiality is a compelling reason.").

[95] 904 S.W.2d 643, 646-47 (Tex. 1995).

reliance placed by the client on the confidential nature of the communications *create[d] special reasons*" to apply the broader attorney-client privilege.[96]

In a different context involving similar tensions between public access and the need for confidentiality, federal courts have affirmed that the need to preserve the attorney-client privilege is compelling. Applying a compelling-reason standard to determine whether to seal judicial records, federal courts generally accept the attorney-client privilege as a "compelling reason" justifying a motion to seal[97] even when balanced against the public's substantial right to access the information: "When privileged materials must be filed in a case, and the privilege has not been waived, courts generally find compelling reasons to overcome the strong presumption in favor of public access exist sufficient to warrant sealing those materials."[98]

---

[96] *Id.* at 647 (emphasis added).

[97] *See Hanson v. Wells Fargo Home Mortg., Inc.*, No. C13-0939JLR, 2013 WL 5674997, at *3 (W.D. Wash. Oct. 17, 2013) ("Courts generally accept attorney-client privilege and the work-product doctrine as a 'compelling reason' justifying a motion to seal." (citing *Lugosch*, 435 F.3d at 125)); *Travelers Indem. Co. v. Excalibur Reinsurance Corp.*, No. 11-CV-1209 (CSH), 2013 WL 4012772, at *5 (D. Conn. Aug. 5, 2013) ("[I]t is well-settled within the Second Circuit that the attorney-client privilege may be a sufficiently compelling reason to defeat the public's right of access to judicial documents."); *Travelers Prop. Cas. Co. of Am. v. Centex Homes*, No. 11-3638-SC, 2013 WL 707918, at *2 (N.D. Cal. Feb. 26, 2013) (accepting attorney-client privilege as a compelling reason to allow a party to refile redacted version of document attached to summary-judgment motion); *TriQuint Semiconductor, Inc. v. Avago Techs. Ltd.*, No. CV 09-1531-PHX-JAT, 2011 WL 6182346, at *5 (D. Ariz. Dec. 13, 2011) (accepting attorney-client privilege as a compelling reason justifying sealing court records); *Asdale v. Int'l Game Tech.*, No. 3:04-CV-703-RAM, 2010 WL 2161930, at *5 (D. Nev. May 28, 2010) (accepting attorney-client privilege and the work-product doctrine as providing both good cause and a compelling reason to seal nondispositive and dispositive motions, respectively).

[98] *Wilcox v. Bibin*, 2:15-CV-00261-EJL-REB, 2016 WL 740396, at *3 (D. Idaho Feb. 24, 2016); *see also Rudd Equip. Co. v. John Deere Constr. & Forestry Co.*, 834 F.3d 589, 594-95 (6th Cir. 2016) ("[O]nly trade secrets, information covered by a recognized privilege (such as the attorney-client privilege), and information required by statute to be maintained in confidence (such as the name of a minor victim of a sexual assault), is typically enough to overcome the presumption of access." (quoting *Baxter Int'l, Inc. v. Abbott Labs*, 297 F.3d 544, 546 (7th Cir. 2002))); *Ancier v. Egan*, CV No. 14-00294 JMS-RLP, 2015 WL 6757528, at *2 (D. Haw. Nov. 4, 2015) ("Generally, compelling reasons that are sufficient to overcome this strong presumption exist when court filings contain attorney-client communications." (citing *Creative Tent Int'l Inc. v. Kramer*, No. CV-15-8005-PCT-SMM, 2015 WL 4638320, at *3 (D. Ariz. Aug. 4, 2015))); *Guidiville Rancheria of Cal. v. U.S.*, No. 12-cv-1326 YGR, 2013 WL 6571945, at *9 (N.D. Cal. Dec. 13, 2013)

23

As the PIA and the common law both bear witness, the attorney-client privilege protects a relationship that is integral to the administration of justice as well as a government that functions for the benefit of the people.

## C. Waiver

Despite advancing and protecting important interests, the attorney-client privilege could not be a "compelling reason to withhold the [requested] information" if confidentiality has been waived. Thus, before balancing the interests protected by the privilege against those served by the PIA, we must consider whether noncompliance with section 552.301's ten-day deadline waives the attorney-client privilege. We hold that a governmental body does not forfeit the attorney-client privilege by failing to timely request an attorney general decision under section 552.301.

"Generally, 'waiver' consists of the intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right."[99] Merely missing a statutory deadline does not mirror any of the conduct our rules and case law recognize as waiving a privilege. Nor does the PIA's language support the conclusion that the privilege may be waived by inaction or delay. We elaborate on both points as follows.

Rule 511 of the Texas Rules of Evidence governs waiver of evidentiary privileges by voluntary disclosure. Subsection (a) of Rule 511 sets forth the general rule that evidentiary privileges are waived if the privilege holder voluntarily discloses the privileged matter, consents to

---

("[T]he attorney-client privilege . . . establishes compelling reasons for sealing.").

[99] *In re Nationwide Ins. Co.*, 494 S.W.3d 708, 712 (Tex. 2016) (orig. proceeding).

24

disclosure, or places the matter at issue.[100] The circumstances Rule 511(a) recognizes as waiving a privilege are materially dissimilar to those presented in this case. Subsection (b) of the rule applies only to the attorney-client privilege and imposes limitations on the general waiver rule to preserve the privilege despite actual disclosure.[101] Under subsection (b), the attorney-client privilege is afforded additional protection against waiver.

The attorney-client privilege may also be waived by inadvertent disclosure during litigation, if the disclosure is accompanied by conduct inconsistent with claiming the privilege of confidentiality. "[T]he essential function of the privilege is to protect a confidence that, once revealed *by any means*, leaves the privilege with no legitimate function to perform."[102] Notwithstanding actual disclosure, however, Texas Rule of Civil Procedure 193.3(d) preserves a claim of privilege if the privilege holder (1) did not intend to waive the privilege and (2) takes prompt action to claim the privilege after "actually discover[ing]" the disclosure was made.[103] Rule 193.3(d) "was designed to ensure that important privileges are not waived by mere inadvertence or mistake."[104] But when inadvertence is coupled with failure to take prompt remedial action after

---

[100] *See* TEX. R. EVID. 511(a).

[101] *Id.* 511(b).

[102] 1 MCCORMICK ON EVIDENCE § 93 (7th ed. 2013) (emphasis added).

[103] TEX. R. CIV. P. 193.3(d); *see also* TEX. R. EVID. 511(b)(2) ("When made in a Texas state proceeding, an inadvertent disclosure does not operate as a waiver if the holder followed the procedures of Rule of Civil Procedure 193.3(d).").

[104] *In re Christus Spohn Hosp. Kleberg*, 222 S.W.3d 434, 439 (Tex. 2007) (orig. proceeding); *see also* TEX. R. CIV. P. 193.4 cmt. 4 ("The focus is on the intent to waive the privilege, not the intent to produce the material or information. A party who fails to diligently screen documents before producing them does not waive a claim of privilege.").

25

discovering actual disclosure of privileged information, the privilege is waived because inaction under such circumstances is inconsistent with claiming the privilege.

Citing Rule 193.3(d) by analogy, the Attorney General suggests sections 552.301 and 552.302 should be construed as effecting a waiver by inaction or omission. But the scenario described in Rule 193.3(d)—actual disclosure followed by delayed action results in waiver—is the converse of the question presented here: does delay waive the privilege and compel disclosure?

Rule 193.3(d) contemplates waiver of confidentiality in the context of an inadvertent, *but actual*, disclosure.[105] In this case, there has been no disclosure, and the issue is whether the PIA compels disclosure *despite* the absence of actual disclosure and *without regard to* the City's efforts to maintain confidentiality under section 552.302. Rule 193.3(d) is substantively inapposite.

In addition to actual disclosure, the attorney-client privilege may be waived by "offensive use" of the privilege. Offensive use occurs when a party seeking affirmative relief "attempts to protect outcome-determinative information from any discovery."[106] Though we have recognized the vitality of the offensive-use doctrine, we have explained that "an offensive use waiver of a privilege should not lightly be found" because privileges "represent society's desire to protect certain

---

[105] *See* TEX. R. CIV. P. 193.3(d) ("A party who produces material or information without intending to waive a claim of privilege does not waive that claim under these rules or the Rules of Evidence."); TEX. R. EVID. 511(b) ("Notwithstanding paragraph (a), the following provisions apply, in the circumstances set out, to disclosure of a communication or information covered by the lawyer-client privilege or work-product protection.").

[106] *In re M-I L.L.C.*, 2016 WL 2981342, at *7, __ S.W.3d __ (Tex. 2016); *see Republic Ins. Co. v. Davis*, 856 S.W.2d 158, 163 (Tex. 1993) ("In an instance in which the [attorney-client] privilege is being used as a sword rather than a shield, the privilege may be waived.").

26

relationships."[107]  An untimely request for an attorney general decision under section 552.301 does not implicate concerns equivalent to those undergirding the offensive-use doctrine.

Finally, and most decisively, section 552.302's language cannot reasonably be construed as effecting a waiver of confidentiality.  Some PIA sections explicitly refer to waiver,[108] but section 552.302 does not.  Rather than waiving interests that are protected by a statutory exception to disclosure, section 552.302's express language creates a *presumption* that disclosure is required.[109] Because the presumption is rebuttable, we conclude that missing the statutory deadline in section 552.301 does not waive the attorney-client privilege.

## D. Balancing Competing Interests

Our inquiry does not end with establishing that the interests secured by the attorney-client privilege are inherently compelling and that mere delay in seeking an attorney general decision does not waive the privilege.  Those determinations impact only one side of the balancing equation.  We must also consider whether the significant interests the attorney-client privilege advances outweigh competing interests favoring disclosure and the statutory presumption that disclosure is required.

We begin our analysis by observing that, under the PIA, (1) the public is not entitled to information the Legislature has chosen to except from required public disclosure,[110] and (2) section 552.302's "compelling reason" safeguard applies only to information the PIA already excepts from

---

[107] *Republic Ins. Co.*, 856 S.W.2d at 163.

[108] *See* TEX. GOV'T CODE §§ 552.0038(f), .008(b), .134(d), .156(d).

[109] *Id.* § 552.302.

[110] *Id.* §§ 552.001, .101-.156.

27

disclosure.[111] Accordingly, a requestor's general right of access to public information is not a competing interest to be weighed under the compelling-reason balancing test.[112]

Instead, the failure to timely request an attorney general decision under section 552.301 of the PIA implicates the public's interest in the "prompt" production of public information.[113] The PIA's deadlines help ensure governmental bodies do not impede the public's access to public information. Compliance with statutory deadlines furthers important interests in avoiding delay and preventing gamesmanship and obstructionism.

These interests are undoubtedly significant, but the PIA expressly contemplates they may be overcome by countervailing interests of utmost importance.[114] We conclude the interests protected by the attorney-client privilege surpass that high threshold. When weighed against the need for expediency, the interests protected by the attorney-client privilege—and the irremediable consequences of disclosure—are demonstrably more compelling.

Under the PIA, the public has no right of access to privileged information in the first instance and only a rebuttable presumption of access in the second.[115] We must also consider that the

_____

[111] _See id._ §§ 552.001(a), .021, .301-.302.

[112] _See Tex. Dep't of Pub. Safety v. Cox Tex. Newspapers, L.P._, 343 S.W.3d 112, 114 (Tex. 2011); _cf. U.S. v. Kravetz_, 706 F.3d 47, 59 (1st Cir. 2013) ("'Though the public's right of access is vibrant, it is not unfettered. Important countervailing interests can, in given instances, overwhelm the usual presumption and defeat access.'" (quoting _Siedle v. Putnam Invs., Inc._, 147 F.3d 7, 10 (1st Cir. 1998))).

[113] Tex. Gov't Code § 552.221(a).

[114] _See id._ § 552.302.

[115] _See, e.g._, _id._ §§ 552.107 (categorically excepting attorney-client privileged information from the statute's public-disclosure requirement), .302 (rebuttably presuming otherwise exempt information is open to the public); _cf. In re Lindsey_, 158 F.3d 1263, 1269 (D.C. Cir. 1988) (recognizing that, although the federal Freedom of Information Act (FOIA) "[did] not itself create a government attorney-client privilege[,] 'Congress intended that agencies should not lose

28

attorney-client privilege is afforded to the government *for the public's benefit*; accordingly, the public's interest is not one-sided in this context. Because the privilege benefits both the governmental body and the people it represents, the public's interest in maintaining confidentiality must be factored into the analysis. Among other shared benefits, the privilege shields confidential information from third parties whose litigation or business interests are adverse to the public's interest, promotes a culture that incentivizes governmental bodies to seek legal advice, and allows the free flow of information between attorney and client without fear of compelled public disclosure.[116]

Protecting privileged attorney-client communications is also more urgent than promptness because the PIA provides disincentives to gamesmanship that might otherwise reward dilatory conduct, intentional or otherwise. Under the PIA, there is no benefit to bypassing the Attorney General altogether, and delay bears its own consequences.

---

the protection traditionally afforded through the evidentiary privileges simply because of the passage of FOIA'" (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 862 (D.C. Cir. 1980))); RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 74 (2000) ("Unless applicable law otherwise provides, the attorney-client privilege extends to a communication of a governmental organization . . . and of an individual employee or other agent of a governmental organization as a client with respect to his or her personal interest . . . .").

[116] *See In re Grand Jury Investigation*, 399 F.3d 527, 534 (2d Cir. 2005) ("Abrogating the privilege undermines that culture and thereby impairs the public interest."); *cf. U.S. v. Jicarilla Apache Nation*, 564 U.S. 162, 169 (2011) ("[T]he objectives of the attorney-client privilege apply to governmental clients."); *Grand Jury Investigation*, 399 F.3d at 533 ("There is, then, substantial authority for the view that the rationale supporting the attorney-client privilege applicable to private entities has general relevance to governmental entities as well."); *Ross v. City of Memphis*, 423 F.3d 596, 602 (6th Cir. 2005) ("We see no reason that [the] function [of promoting full and frank communications and encouraging observance of law] is no longer served simply because the corporation is a municipality or, more broadly, that the organization or agency is a government entity. Governments must not only follow the laws, but are under additional constitutional and ethical obligations to their citizens. The privilege helps insure that conversations between municipal officials and attorneys will be honest and complete. In so doing, it encourages and facilitates the fulfillment of those obligations."); 8 JOHN H. WIGMORE, EVIDENCE § 2291 (McNaughton rev. 1961) ("The policy of the privilege has been plainly grounded since the latter part of the 1700s . . . . In order to promote freedom of consultation of legal advisers by clients, the apprehension of compelled disclosure by the legal advisers must be removed; hence the law must prohibit such disclosure except on the client's consent.").

For one thing, the interests protected by some statutory exceptions will not independently satisfy the compelling-reason standard; thus, failing to timely assert an applicable exception could result in mandatory disclosure that might otherwise have been avoided. Because section 552.302 provides only a limited safeguard, missing the deadline in section 552.301 is a risky endeavor.

Refusing to request or comply with an attorney general decision carries the additional risk of a civil-enforcement action that—win or lose—would surely be costly. But if lost, obtaining and relying on an attorney general decision under section 552.301 precludes an award of attorney fees and litigation costs to the prevailing plaintiff. The PIA's fee-shifting provisions thus provide both a carrot and a stick.

Finally, a governmental body's only way to avoid disclosing public information to a requestor is a suit that "seeks declaratory relief from compliance with [an attorney general] decision issued under Subchapter G [sections 552.301 to 552.309]."[117] This provision also helps secure the Attorney General's oversight as contemplated by the Legislature.

To require public disclosure of confidential attorney-client communications as an automatic—and irremediable—sanction for missing a statutory deadline is not necessary to achieve the PIA's objective of an open government and would be a jurisprudential course fraught with peril. Compelled forfeiture of the privilege under such circumstances necessarily undermines its underpinnings and threatens the foundation of a justice system that thrives on full and candid legal

---

[117] TEX. GOV'T CODE § 552.324(a)(2).

30

representation. Most importantly, however, such an outcome is not supported by a plain reading of the statutory text.

The PIA's exception for attorney-client communications affirms the importance of honest and candid conversations between governmental bodies and their legal counsel. Eviscerating the privilege by compelling disclosure in pursuit of "promptness" may have a wide-reaching and chilling effect on communications between governmental bodies and their counsel.[118] When a privilege as sacrosanct as the attorney-client privilege is irretrievably lost under the unexceptional facts presented here, "governmental entities might well choose to forego fruitful self-analysis and decide not to seek needed legal advice."[119]

Robotic perfection by a governmental body's public information officer is a statutory ideal, not an absolute requirement. To err is human, but to conduct a City's legal affairs without the occasional error would require divinity. The safeguard the Legislature enacted in section 552.302 exists to prevent such a scenario.

### E. Section 552.302 Does Not Require Disclosure

When balanced against the PIA's promptness requirements, the interests safeguarded by the attorney-client privilege present compelling reasons to withhold information protected by the privilege. The harm from compelled dissemination of confidential attorney-client communications is irremediable, and the consequences are visited on both the governmental body and the taxpayers

---

[118] *In re Lindsey*, 148 F.3d 1100, 1112 (D.C. Cir. 1998) ("We may assume that if the government attorney-client privilege does not apply in certain contexts this may chill some communications between government officials and government lawyers.").

[119] *In re City of Georgetown*, 53 S.W.3d 328, 333 (Tex. 2001) (orig. proceeding).

31

it represents. Mandating disclosure would further undermine the attorney-client privilege's fundamental purpose by impairing frank discourse between a governmental body and its counsel.[120]

In contrast, allowing a governmental body to withhold attorney-client communications after an untimely request for an attorney general decision bears less onerous consequences that may be ameliorated by several statutory incentives and disincentives.[121] Stated summarily, even when a compelling reason exists to withhold disclosure, the PIA incentivizes governmental bodies to request an attorney general decision (1) to ensure the attorney-client privilege covers all the information the governmental body desires to withhold, (2) to assert additional exceptions for withholding information for which no "compelling reason to withhold information" exists, (3) to avoid a costly

---

[120] *See Upjohn Co. v. U.S.*, 449 U.S. 383, 389 (1981) ("[The attorney-client] privilege 'is founded upon the necessity, in the interest and administration of justice, of the aid of persons having knowledge of the law and skilled in its practice, which assistance can only be safely and readily availed of when free from the consequences or the apprehension of disclosure.'" (quoting *Hunt v. Blackburn*, 128 U.S. 464, 470 (1888))); *In re Lindsey*, 158 F.3d 1263, 1276 (D.C. Cir. 1998) ("We may assume that if the government attorney-client privilege does not apply in certain contexts this may chill some communications between government officials and government lawyers."); *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 863 (D.C. Cir. 1980) (when "the Government is dealing with its attorneys as would any private party seeking advice to protect personal interests," it "needs the same assurance of confidentiality so it will not be deterred from full and frank communications with its counselors"); *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 252 (D.C. Cir. 1977) ("The policy objective of [the attorney-client] privilege is certainly consistent with the policy objective of [an exemption] intended to protect the quality of agency decision-making by preventing the disclosure requirement of the [Freedom of Information Act] from cutting off the flow of information to agency decision-makers. Certainly this covers professional advice on legal questions which bears on those decisions. The opinion of even the finest attorney, however, is no better than the information which his client provides. In order to ensure that a client receives the best possible legal advice, based on a full and frank discussion with his attorney, the attorney-client privilege assures him that confidential communications to his attorney will not be disclosed without his consent.").

[121] *E.g.*, Tex. Gov't Code §§ 552.321 (requestor or attorney general suit for writ of mandamus), .3215 (action for declaratory or injunctive relief against a governmental body for violating the PIA), .323 (fee-shifting provisions favoring substantially prevailing plaintiffs).

civil-enforcement action, and (4) to avoid assessment of litigation costs and reasonable attorney fees if the plaintiff substantially prevails in such an action.[122]

Although we must construe the PIA liberally in favor of granting requests for information,[123] we hold that the significant interests supporting withholding confidential and privileged attorney-client communications outweigh the competing interests supporting disclosure. We therefore conclude a "compelling reason" to withhold confidential attorney-client communications exists and, absent waiver, rebuts the presumption that the information protected by the privilege is "subject to required public disclosure."[124]

## F. Response to the Dissent

Though quibbling here and there about the actual importance of the attorney-client privilege in the public sector, the dissent's analysis fundamentally depends on the fiat that exceptions and compelling reasons are mutually exclusive under the statute.[125] But no authority—statutory or otherwise—supports the conclusion that compelling interests motivating a statutory exception are categorically disqualified from constituting a "compelling reason" to withhold information from

---

[122] *See id.* §§ 552.321, .3215, .323.

[123] *Id.* § 552.001 (demanding liberal construction to implement the state's policy of open government and to favor disclosing information about governmental affairs).

[124] *See id.* § 552.302. In light of this holding, we need not address the City's alternative argument that "substantial harm" to its bargaining position constitutes a "compelling reason" for withholding the requested information.

[125] *Post* at 36-37 (BOYD, J., dissenting) ("Because the Act requires both that an exception apply and that a compelling reason exist, neither the Act's exceptions nor the privileges and confidentiality that trigger an exception are sufficient alone to establish a compelling reason."); *id.* at 30 ("[N]either an exception nor the interests it supports can independently qualify as a compelling reason that outweighs the public's interest in prompt access to public information under the Act."). *But see id.* at 33 n.20 (agreeing the Court could consider the "'policy of preventing bioterrorism'" that underlies section 552.152's exception from public disclosure "when deciding whether a compelling reason exists").

public disclosure.  The dissent's proclamation pays lip service to our fundamental obligation to construe statutes as written, but is textually unsupportable and, frankly, preposterous.

First, the Legislature has placed no restrictions on the compelling-reason standard.  Indeed, as the dissent readily acknowledges, the "actual language" in section 552.302 applies to "*any* 'compelling reason.'"[126]  Second, the statute betrays no Legislative intent to ignore policies embodied in and interests protected by statutory exceptions in determining whether a "compelling reason to withhold the information" exists.  Not a single word in the PIA supports a construction of section 552.302 as rendering irrelevant, for example, the policy of preventing bioterrorism that underlies section 552.151 or the interest in avoiding a "substantial threat of physical harm" to an employee or officer as advanced by section 552.152.[127]  In this case, our responsibility to determine whether a compelling reason exists requires that we consider the interests protected by the attorney-client privilege—interests the dissent ignores entirely—and not disregard them out of hand merely because they were important enough for the Legislature to protect in the first instance.[128]

This is not, as the dissent says, "a distinction without a difference"[129] because not all of the policies and interests animating a statutory exception will necessarily be compelling in their own

---

[126] *Id.* at 33-34.

[127] *See* TEX. GOV'T CODE §§ 552.151, .152.

[128] The dissent's claim to "acknowledge the privilege's importance" falls flat because the analysis does not recognize or evaluate the interests underlying the privilege in declaring those interests are necessarily overcome by delay and necessarily overpowered by the public's interest in promptness. *Post* at 3 n.1, 30 (BOYD, J., dissenting). The dissent, instead, relies on the circular argument that the Legislature excepted privileged information from disclosure to protect important interests, but those interests cannot be "compelling reason[s] to withhold information from disclosure" because the Legislature excepted privileged information from disclosure to the public. *See id.* at 16-17.

[129] *Id.* at 16.

34

right—in whole or part.[130] We cannot, however, ignore those that are. The statutory support for this construction of the statute is, quite simply, the compelling-reason standard articulated in section 552.302.[131]

The dissent's theory to the contrary turns on an interpretation of section 552.302 that requires privilege *plus* other compelling circumstances. Aside from engrafting restrictions that do not exist in the statutory language, the dissent offers few parameters as to what would qualify. We are left only with the dissent's view that a compelling reason (1) will usually address the governmental body's "reasons for its failure to timely and properly assert the privilege,"[132] and (2) "might exist if the governmental body establishes that substantial harm would result if the information is released."[133]

In summarily concluding that the interests protected by the attorney-client privilege are not significant enough to rebut the public-disclosure presumption, the dissent gives short shrift to the compelling interests underlying the attorney-client privilege, cites no authority supporting compelled disclosure of attorney-client privileged information due to tardiness or inaction, and overlooks the

---

[130] *See, e.g.*, TEX. GOV'T CODE §§ 552.106(a) (excepting from mandatory disclosure "a draft or working paper involved in the preparation of proposed legislation"), .122 (excepting from mandatory disclosure a test item developed by an educational agency funded by state revenue, a licensing agency, or a governmental body).

[131] *Post* at 13 (complaining that "the Court can provide no statutory basis for deciding when the interests that an exception protects are categorically compelling and when they are not").

[132] *Id.* at 30. The dissent intimates that an untimely request for an attorney general decision equates to "failure to timely and properly assert the [attorney-client] privilege." *Id.* While it is true that, in this case, the City did not timely and properly assert a *statutory exception* to disclosure, the City has jealously guarded its attorney-client privilege, asserting it as a "compelling reason to withhold the information" from disclosure. There is no statutory deadline for asserting the attorney-client privilege or for claiming a "compelling reason to withhold the information."

[133] *Id.* at 31.

35

public interest in maintaining confidentiality of attorney-client communications. As a substitute for these inquiries, the dissent's analysis elevates promptness to near conclusive importance. The PIA does not, however, require a compelling reason for "untimeliness" or "lack of diligence"; it requires a "compelling reason to withhold the information" from public disclosure. The significant interests advanced and protected by the attorney-client privilege meet that standard.

The dissent's analytical gaps are not overcome by the host of boilerplate open-records decisions the dissent offers to "prove[]" that routinely depriving the attorney-client privilege of force over the last twenty-two years has not prevented governmental bodies from seeking legal advice or chilled full and frank legal communications.[134] No matter how many open-records decisions have applied the Attorney General's unduly restrictive interpretation of section 552.302—the underlying rationale of which the dissent correctly repudiates[135]—proof that a rule has been applied is no proof of the rule's impact. The reality is we do not know how twenty-two years of routinely adverse legal rulings have shaped internal discourse; whether ethical and legal violations have occurred that may have been prevented under a proper construction of the PIA; or how the public fisc has been affected. We do know, however, that the attorney-client privilege exists because the systemic harm from denying it is real even if it is not quantifiable.[136] We also know that the privilege's purpose is well

---

[134] *Id.* at 3, 26-29.

[135] *Id.* at 14 & n.11.

[136] *See supra*, nn.88-92.

36

established and enduring, and that it applies with "special force" to the government because it advances the public's best interests.[137]

Ipse dixit, however, is not proof of anything—one way or the other—and is no substitute for 500 years of precedent.[138] If it were, the same open-records decisions the dissent relies on would "prove[]" and debunk the dissent's own "parade of horribles" by demonstrating that even under the Attorney General's restrictive construction of the statutory standard, governmental bodies continued to engage the PIA's oversight process after missing the statutory deadline.[139]

As a final rejoinder, we address the dissent's refrain that we are substituting our judgment, our preferences, and our rules for the Legislature's. When we endeavor to ascertain the meaning of an undefined statutory term that is integral to a statutory inquiry, we are not overstepping the bounds of our authority merely because our colleagues disagree with our analysis or conclusions. "[T]o admit that disagreements do and will always exist over hard and fine questions of law doesn't mean those disagreements are the products of personal will or politics rather than the products of diligent and honest efforts by all involved to make sense of the legal materials at hand."[140] But if that criticism were fairly lodged in any direction, it would be toward those who, in the guise of

---

[137] *See supra*, nn.81-88, 116.

[138] 8 JOHN H. WIGMORE, EVIDENCE § 2290 (McNaughton rev. 1961) ("The history of [the attorney-client] privilege goes back to the reign of Elizabeth I, where the privilege already appears as unquestioned." (citing *Berd v. Lovelace*, Cary 88, 21 Eng. Rep. 33 (Ch. 1577))).

[139] *See, e.g.*, *post* at 2-3 (BOYD, J., dissenting) ("Under the Court's holding, establishing the exception will always constitute a compelling reason . . . . obliterat[ing] the sole method by which the Act compels the government to timely and properly assert the attorney-client privilege.").

[140] Hon. Neil M. Gorsuch, *Law's Irony*, 37 HARV. J. L. & PUB. POL'Y 743, 752-53 (2014).

interpreting a statute, invent a standard that imposes limitations that are more restrictive than the plain language allows while simultaneously denouncing a party's construction of the statute on the very same basis.[141] By substituting inflammatory rhetoric for analysis, the dissent confirms the adage that, when neither the law nor the facts are in your favor, pound the table.

## IV. Conclusion

The PIA promotes and advances the public's interest in governmental transparency and openness, but not at the expense of the public's equally significant interest in ensuring public officials pursue and obtain legal advice and representation in affairs of governance. The significance of the interests protected by the attorney-client privilege and the need to protect attorney-client confidences from compelled public disclosure were not lost on the Legislature in enacting the PIA. The PIA addresses the competing values of transparency and the need for confidentiality by excepting confidential attorney-client communications from mandatory public disclosure. In doing so, the PIA recognizes the importance of the attorney-client privilege and affirms that the public interest is best served when those sworn to protect it are guided by fully informed legal advice in conducting public affairs.

Though the PIA must be construed liberally in favor of granting a request for public information, the "compelling reason" inquiry requires us to weigh the public's interest in expeditious assertion of a statutory exception against the invaluable right to have attorney-client communications protected from compelled public disclosure. Meeting statutory deadlines is certainly important, but

---

[141] *Post* at 1-3, 6-8.

38

as the PIA plainly articulates, is not determinative. Weighing against the need for prompt action is the irremediable consequence of compelling disclosure; once privileged information is disclosed, confidentiality is lost for all times and all purposes. When the interests are balanced, the compelling nature of the attorney-client privilege is manifest. Because there is a compelling reason to withhold information covered by the attorney-client privilege, we affirm the lower-court judgments holding the City of Dallas need not disclose that information to the requestors.

_____

Eva M. Guzman
Justice

**OPINION DELIVERED:** February 3, 2017

39