IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
January 27, 2021 Session

IN RE ESTATE OF B. RAY THOMPSON, JR.

**Appeal from the Chancery Court for Knox County**
**No. 79197-2     Clarence E. Pridemore, Jr., Chancellor**

**No. E2019-01364-COA-R3-CV**

AND

IN RE ESTATE OF JUANNE JENNINGS THOMPSON

**Appeal from the Chancery Court for Knox County**
**No. 79947-2     Clarence E. Pridemore, Jr., Chancellor**

**No. E2019-01365-COA-R3-CV**

This consolidated appeal arises from a dispute among various children and grandchildren of B. Ray Thompson, Jr. ("B. Ray Jr.") and Juanne Jennings Thompson ("Juanne" or together, "Decedents"),[1] over the estates of both B. Ray Jr. and Juanne. When three of the Decedents' children obtained a court order sealing the records for both estates, a different faction of the family filed petitions to intervene in the estate actions and to unseal the records. The Chancery Court for Knox County (the "trial court") denied the petitions for intervention and left several documents under seal. This appeal followed. We hold that the trial court abused its discretion. The judgment of the trial court is reversed, and the case remanded for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment Reversed; Case Remanded**

KRISTI M. DAVIS, J., delivered the opinion of the court, in which JOHN W. MCCLARTY and THOMAS R. FRIERSON, II, JJ., joined.

---

[1] This case involves many people who have the same last name. To avoid confusion, we refer throughout this opinion to the various parties by their first names or their initials.

Steven A. Riley and Keane A. Barger, Nashville, Tennessee, for the appellant, Nicole Diane Mattina Thompson.

Ronald T. Hill and Rameen J. Nasrollahi, Knoxville, Tennessee, for the appellees, Adella Sands Thompson and Rebekah Lee-Isla Thompson Palmer.

Daryl R. Fansler, Knoxville, Tennessee, for the appellee, Catherine Vance Thompson.

**OPINION**

## I. FACTUAL AND PROCEDURAL BACKGROUND

Decedents have five children and ten grandchildren. The five children are Catherine Vance Thompson ("CVT"), Adella Sands Thompson ("AST"), Rebekah Thompson Palmer ("RTP"), Sarah Thompson ("ST"), and B. Ray Thompson, III ("B. Ray III"). In 2009, Decedents established a trust for the benefit of their ten grandchildren, which purportedly consists of different sub-trusts benefitting each grandchild. This trust is referred to as the "G-10 Trust." During their lifetimes, both Decedents also established their own revocable living trusts, which are referred to as, respectively, the B. Ray Thompson, Jr. Revocable Living Trust (the "B. Ray Jr. Trust") and the Juanne Jennings Thompson Revocable Living Trust (the "Juanne Trust"). The G-10 Trust is separate from both the B. Ray Jr. Trust and the Juanne Trust, although the G-10 Trust is a beneficiary of both.

B. Ray Jr. died testate on June 29, 2017. Juanne, family friend Albert Huddleston ("AH"), and AST were named as co-executors of B. Ray Jr.'s estate.[2] Per his will, the residue of B. Ray Jr.'s estate was to flow to the B. Ray Jr. Trust. CVT, AST, RTP, and AH were all initially co-trustees of the B. Ray Jr. Trust. B. Ray Jr.'s will was submitted for probate in the trial court on July 20, 2017. On August 4, 2017 Juanne filed a pleading titled "Petition to Set Aside Homestead, Exempt Property, Year's Support, and Elective Share, and Spouse's Election to Include in Decedent's Estate Certain Property" ("Petition to Set Aside") in the trial court. This petition alleged, *inter alia*, that while alive, B. Ray Jr. made numerous fraudulent transfers to the B. Ray Jr. Trust as a means of depriving Juanne of her elective share of the Decedents' substantial estate. Before Juanne's petition could be heard, however, Juanne passed away on October 4, 2017. Juanne died testate, and her will also provided that the residue of her estate was to pass to the Juanne Trust. CVT, AST, RTP, and AH were the initial co-executors of Juanne's estate, and Juanne's will was also submitted for probate in the trial court. CVT, AST, and RTP also serve as

---

[2] Another individual was also initially named a co-executor of B. Ray Jr.'s estate, but she executed a declination of service and is not involved in the present case.

co-trustees of the Juanne Trust.[3]

B. Ray Jr. and Juanne were not in agreement regarding the disposition of their estate, and the Petition to Set Aside was the culmination of that disagreement. However, in early 2018, all parties involved in administering Decedents' respective estates and trusts reached an agreement regarding Juanne's claims against B. Ray Jr.'s estate and sought approval from the trial court for said agreement. The motion for approval, the settlement agreement, and the attached exhibits are referred to collectively herein as the "Consent Agreement." Shortly after settlement was reached, on March 22, 2018, the parties moved the trial court for an order to file documents under seal in B. Ray Jr.'s estate action.[4] The parties asked for an order providing that any documents "containing financial information, or otherwise relating to the financial interests of [Decedents] . . . be filed with the Court under seal and maintained as confidential by the parties and their counsel[.]" The parties also requested that hearings be closed to the public, that the trial court's rulings addressing any financial information also be sealed, and that any transcripts or portions thereof relating to Decedents' financial information filed with the court be filed under seal and maintained as confidential by the parties. The motion cited Tennessee Rule of Civil Procedure 26.03 and alleged that good cause existed for such an order because "information relating to the Decedents' financial interests and their trusts and estates constitute matters of no legitimate public interest and the Parties' right to privacy . . . is appropriately protected by [the trial court]."

The trial court entered an order on March 22, 2018, granting the parties' motion and effectively sealing the court's record and closing any hearings to the public. Shortly thereafter, a final order (the "Final Judgment") resolving the fraud allegations was entered and placed under seal.

Meanwhile, a dispute arose between daughters CVT, AST, and RTP (hereinafter referred to as "Appellees"),[5] and AH regarding Juanne's estate. This dispute led to Appellees filing, on December 11, 2018, a petition to remove AH as co-executor of Juanne's estate ("Petition for Removal"). On December 12, 2018, the trial court entered an agreed order in Juanne's estate action providing that all parties "agree that the [Petition for Removal] should be placed under seal until further Order of the Court." This order also

---

[3] There are also various corporate co-executors and co-trustees involved in the Decedents' respective estates and trusts. It does not appear from the records, however, that any of these entities meaningfully dispute the narrow issues addressed in this appeal, nor did any of the corporate co-executors or co-trustees file a brief in this matter.

[4] The motion provides that "all persons and entities who have or claim any interest in the subject matter of this Action" agreed to move the trial court for this order.

[5] While CVT, AST, and RTP are not all represented by the same counsel, their respective legal positions throughout this case have been consistent, and they filed a j
oint brief in this Court. For ease, we refer to them collectively.

provided that "all subsequent pleadings related thereto shall be filed under seal pending further Orders of the Court." Accordingly, the answer and counterclaim to the Petition for Removal were also filed under seal, as was the answer to the counterclaim (collectively, the "Removal Documents").[6]

In the meantime, a different faction of Decedents' children and grandchildren became interested in Decedents' estate actions. After learning that the court records in both estates were effectively sealed, B. Ray III and his daughter, Nicole Thompson ("NT" or "Appellant"), ST, and two of ST's children (collectively, "Intervenors") filed petitions to intervene in both B. Ray Jr.'s and Juanne's estate cases on May 22, 2019. In both petitions, the movants sought intervention and modification of the current protective orders so as to give Intervenors access to the sealed documents. Alternatively, Intervenors asked that all documents in the record be unsealed. Intervenors asserted that the trial court should only seal documents for a "compelling" reason and that the general financial privacy of Decedents and the parties did not meet that standard.

Appellees adamantly opposed intervention but agreed that the trust instruments for both the B. Ray Jr. Trust and the Juanne Trust should be released to Intervenors' counsel, as well as the corporate co-trustee of the G-10 Trust, to ensure the G-10 Trust was appropriately funded as a beneficiary of the Decedents' other respective trusts. An agreed order allowing disclosure of the trust instruments to Intervenors' counsel was entered on July 2, 2019.

A hearing on both petitions for intervention was held on July 9, 2019. The trial court denied the request for intervention and refused to unseal any court records. The trial court found that Intervenors "do not qualify under Tenn. R. Civ. P. 24.01 for Intervention as of Right" and that "Permissive Intervention pursuant to Tenn. R. Civ. P. 24.02 would cause undue delay and would prejudice the adjudication of the rights of the original parties." Intervenors appealed to this Court, and we consolidated the appeals. Before the appeal could proceed, however, we issued an order explaining that the trial court failed to follow the correct procedure in sealing its record and expounding on the circumstances under which documents may remain under seal in this Court. We explained in pertinent part:

> For a document to be filed under seal in the appellate court pursuant to subdivision (b), the trial court must have made an individualized determination that the particular document should have been filed under seal.

---

[6] CVT, AST, RTP and AH eventually came to an agreement regarding their claims against one another and an agreed order was entered allowing AH to resign as co-executor of both B. Ray Jr.'s and Juanne's estate. All parties involved agreed that their claims would be dismissed with prejudice, and AH is not participating in the present appeal.

A document will not be filed under seal in this court based solely on the stipulation of the parties or on a party's designation of the document as confidential pursuant to a protective order.

Tenn. Ct. App. R. 15(b)(ii).

* * *

The [trial court's] Protective Order merely states that the parties "moved" the court and showed "good cause" for the granting of the Protective Order. The Protective Order fails to justify sealing any specific document or information filed with the clerk of the court. The designation of what would be treated as confidential was not based upon an individualized determination made by the trial court. More specifically, the Protective Order does not satisfy the more rigorous requirements to seal court records that are within the purview of "public records," meaning the information and documents on file with the clerk of the court.

* * *

Accordingly, the clerk of this court shall return the record to the trial court to afford each party the opportunity to identify the specific documents and information that party seeks to file under seal along with a statement of the relevant facts and authorities on which they rely. Any party opposing or supporting the motion shall have the opportunity to file a response. Thereafter, and to the extent the trial court determines that any of the documents or information should be placed under seal, the trial court shall make the requisite findings and conclusions to justify sealing any specifically-identified documents or portions of documents or specifically-identified information, and shall enter an appropriate order[.]

Consequently, the case was remanded back to the trial court for further proceedings, and the parties continued to dispute whether and to what extent the court records should remain sealed.[7] In response to this Court's direction to identify the specific documents and/or information that should remain under seal, both parties filed proposed findings of fact and conclusions of law. Appellees argued in support of the seal, expressing particular concern that the Petition to Set Aside, the Consent Agreement, and the Final Judgment resolving Juanne's claims against B. Ray Jr.'s estate should remain confidential. Appellees' overall contention was that because the estate actions concerned private

---

[7] Eventually, all of the Intervenors aside from NT withdrew from the case. As NT is the only remaining intervenor participating in the present appeal, she is referred to only as "Appellant."

litigants, substantial assets and money, and in some respects minor children, maintaining the seal was necessary. On the other hand, Appellant argued that all documents in the record should be made public because Appellees could not establish any compelling reason warranting the seal. Appellant also alluded to possible malfeasance in the administration of both estates and averred that both she and the public have an interest in knowing how the estates were administered.

On June 24, 2020, the trial court entered findings of fact and conclusions of law, ultimately finding that several documents should remain sealed. The trial court found that the estates at issue are substantial and that full disclosure of the court records would cause embarrassment or even harm to the parties involved, some of whom are minors. In relevant part, the trial court found:

> [T]he Court notes the standards for entering a protective order and for sealing the records at issue in this case. "Public records" include "pleadings, documents, and other papers filed with the clerks of all courts, including courts of record . . ." Tenn. Code Ann. § 10-7-403. Admittedly, the records which [Appellant] seeks to have unsealed are public records pursuant to this section. Consequently, the Court turns to the standards for shielding its own, filed records from public view.

> "The public has a strong interest in obtaining the information contained in the court records." *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305 (6th Cir. 2016). "Tennessee courts have long recognized that judicial proceedings are presumptively open . . ." *In re NHC–Nashville Fire Litigation*, 293 S.W.3d 547, 560 (Tenn. Ct. App. 2008). "The openness of judicial proceedings extends to judicial records." *Id.* at 560 (citing *Knoxville News-Sentinel v. Huskey*, 982 S.W.2d 359, 362-63 (Tenn. Crim. App. 1998)). The openness of judicial records serves three purposes: "(1) promote community respect for the rule of law, (2) provide a check on the activities of judges and litigants, and (3) foster more accurate fact finding." *Id.* at 561.

> * * *

> To determine whether good cause exists to enter a protective order to seal documents, trial courts must balance a party's need for information against the potential for injury if such information is made public. *See Ballard* [*v. Herzke*, 924 S.W.2d 652, 658 (Tenn. 1996)]. The *Ballard* Court delineated certain factors to be used to balance these interests. Factors that weigh against a finding of good cause to seal documents are: "(1) the party benefitting from the protective order is a public entity or official; (2) the

- 6 -

information sought to be sealed relates to a matter of public concern; and (3) the information sought to be sealed is relevant to other litigation and sharing it would promote fairness and efficiency." *Id.* Likewise, factors that weigh in support of a finding of good cause are "(1) the litigation involves private litigants; (2) the litigation concerns matters of private concern or of little legitimate public interest; and (3) disclosure would result in serious embarrassment or other specific harm." *Id.* at 658-59.

The trial court applied these factors to the facts of the present case and found good cause to maintain the seal on several documents in its record:

> Having examined all of the factors in determining whether good cause has been established for a protective order, the Court concludes that its previously entered protective order was appropriate to the extent that it provided that certain documents in the judicial record of this case, for good cause, should be held confidentially by the parties. The Court finds that the good cause shown in this case is the personal and financial privacy of the parties as well as certain allegations made in the filings in the record. Additionally, the interest of the public in this case and the administration of the estates, which is minimal at best, does not outweigh the privacy interests of the parties. In fact, such privacy interests of the parties vastly outweigh any interest that the public might have. The Court further concludes that, despite the Intervenor's request for modification of the protective order, good cause remains for the protective order to remain in place.

> * * *

> The Court further concludes that there are compelling reasons exist [sic] to keep certain documents under seal. Those documents include the Affidavit of Will, the Petition to Set Aside, the [Consent Agreement and Final Judgment], and [the Removal Documents]. The Court concludes that the privacy interests at stake in this estate are paramount and compelling in this case. Although [Decedents'] Will[s] [were] submitted to probate, the disposition of the vast majority of [Decedents'] assets were disposed of through the [Trusts] that [were] created during [their] lifetime[s]. Had [Decedents] wished to make the disposition of [their] assets public, [they] would have done so through probate. Instead, [Decedents] chose to shield the disposition of [their] substantial assets from public view via the [] Trust[s]. The records at issue in this estate detail large sums of money, as well as the recipients of those sums. These privacy interests at stake, including the general privacy of the parties, the protection of the minor children at issue, and the interests of the estate[s] being closed without further interference by

those holding no interest in [Decedents' estates] or the [] Trust[s], offer a compelling reason that outweigh[s] the needs of the public in general. Accordingly, the compelling reason favors sealing of the record in this case. Furthermore, the Court has not found any authority mandating the openness of the record.[8]

Accordingly, although the trial court unsealed a large portion of the court records, the following documents remain under seal pursuant to the foregoing order: B. Ray Jr.'s Affidavit of Will, Juanne's Petition to Set Aside, the Removal Documents regarding the dispute between Appellees and AH, and the Consent Agreement and Final Judgment resolving the fraud claims originally raised by Juanne against B. Ray Jr.'s estate. After the trial court entered its findings of fact and conclusions of law on June 24, 2020, the record was eventually transmitted back to this Court with the trial court's order as well as the sealed documents.

## II.    ISSUES

Appellant challenges the trial court's decision to (1) deny Appellant's request to intervene in the estate actions, and (2) keep the above-listed documents under seal. Appellees raise no additional issues.

## III.    DISCUSSION

### A. Intervention

Appellant first contends that the trial court erred in denying Appellant's motion for intervention in both estate actions. Appellees concede that the law supports Appellant's position as to this issue, and we agree.

Permissive intervention[9] is governed by Tennessee Rule of Civil Procedure 24.02, which provides that "[u]pon timely motion any person may be permitted to intervene in an action . . . (2) when a movant's claim or defense and the main action have a question of law or fact in common." Tenn. R. Civ. P. 24.02(2). "Simply put, '[i]f the would-be intervenor's claim or defense contains a question of law or fact that is also raised by the main action then the requirement of the rule has been satisfied and the trial court is afforded discretion to permit intervention.'" *Kocher v. Bearden*, 546 S.W.3d 78, 83 (Tenn. Ct. App. 2017) (quoting *Ballard v. Herzke*, 924 S.W.2d 652, 657 (Tenn. 1996)). Our Supreme Court

---

[8] Although the trial court separately entered findings of fact and conclusions of law in both estate actions, the salient findings and conclusions are essentially identical.

[9] Although the trial court's order initially denying Appellant's request to intervene also addressed intervention as of right, it appears from the record and Appellant's brief that she is asserting she should have been allowed to intervene pursuant to Tenn. R. Civ. P. 24.02. We therefore proceed under this rule.

has squarely addressed the issue of intervention as it relates to third parties challenging a protective order, as this was the precise scenario at issue in *Ballard*. In that case, a group of journalists sought intervention for purposes of requesting that the trial court rescind a protective order over discovery documents. 924 S.W.2d at 656. The trial court allowed intervention as well as modification of the protective order, and the case eventually made its way to our Supreme Court. *Id.* Given the clear applicability of *Ballard* as to the issue of intervention in this case, we quote directly from that opinion:

> If the would-be intervenor's claim or defense contains a question of law or fact that is also raised by the main action then the requirement of [Rule 24.02] has been satisfied and the trial court is afforded discretion to permit intervention. Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, 7C *Federal Practice and Procedure Civil 2d,* § 1911, pp. 358–63 (West 1986).

> While our research has revealed no authority directly on point in this jurisdiction, we agree with those federal and state courts in other jurisdictions which have routinely found that third parties, including media entities, should be allowed to intervene to seek modification of protective orders to obtain access to judicial proceedings or records. *See Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 778 (3rd Cir. 1994); *Grove Fresh Distributors, Inc. v. Everfresh Juice Co.*, 24 F.3d 893, 898 (7th Cir. 1994) (press should be allowed to challenge a protective order for abuse or impropriety); *Northern States Power Co. v. Westinghouse Elec. Corp.*, 156 F.R.D. 168 (D. Minn. 1994) (intervention is the proper procedure for media challenge to protective order); *City of Hartford v. Chase*, 733 F.Supp. 533 (D. Conn. 1990), *rev'd on other grounds*, 942 F.2d 130 (2nd Cir. 1991) (media allowed to intervene to challenge sealing of document); *Courier–Journal v. Peers*, 747 S.W.2d 125 (Ky. 1988) (hearing allowed to determine whether public's right of access was outweighed by the litigant's right of privacy); *see generally 8 Federal Practice & Procedure Civil 2d*, § 2044.1, p. 576–77.

> In such circumstances, intervention "is not dependent on, nor is it determined by, the status or identification of the parties nor the nature of the dispute." *Id.* Moreover, the question of intervention is collateral to, and does not have any bearing on, the primary issue—modification of the protective order. What is necessary is that the proposed intervenor demonstrate that its claims have "a question of law or fact in common" with the main action. Here, **as in all such cases, by virtue of the fact that the media entities challenge the validity of the protective order entered in the main action,**

**they meet the requirement of Rule 24.02, that their claim have "a question of law or fact in common" with the main action.**

*Id.* at 657 (footnotes omitted) (emphasis added). "Thus, *Ballard* and other Tennessee cases have 'firmly establish[d] the right of the public, including the media, to intervene in court proceedings for the purpose of attending the proceedings, or for the purpose of petitioning the Court to unseal documents and allow public inspection of them.'" *Kocher*, 546 S.W.3d at 84 (quoting *Knoxville News–Sentinel v. Huskey*, 982 S.W.2d 359, 362 (Tenn. Crim. App. 1998)). *Ballard* also provides, however, that once a common question of law or fact is established by the would-be intervenor, intervention becomes "a matter entrusted to the trial court's discretion." *Id.* (citing *Ballard* at 658).

Applying the reasoning of *Ballard* and *Kocher*, we conclude that Appellant meets the requirement of Rule 24.02 of having a question of law or fact in common with the main action inasmuch as Appellant sought intervention for purposes of challenging the trial court's seal on its records. *Kocher*, 546 S.W.3d at 84. Intervention was therefore "entrusted to the trial court's discretion," *id.*, and the trial court denied Appellant's request on the basis that intervention would "cause undue delay and would prejudice the adjudication of the rights of the original parties." Appellees concede on appeal that Tennessee law supports Appellant's right to intervene for purposes of challenging the seal on the judicial records at issue. Moreover, nothing suggests that the probate cases would be unduly delayed by Appellant's intervention, seeing as resolution of the matters within the actions continued despite Appellant's efforts to unseal the records. Further, the documents that remain under seal pertain to disputes that have already been settled, namely, the dispute between the co-executors of Juanne's estate that led to AH's removal as co-executor, and the dispute between the estates of B. Ray Jr. and Juanne regarding B. Ray Jr.'s alleged fraud. Consequently, it remains to be seen how Appellant's quest to gain access to such documents could cause undue delay in the resolution of these matters or prejudice adjudication. *See Kocher*, 546 S.W.3d at 84–85. This conclusion is further buttressed by the fact that a trial court retains jurisdiction to modify a protective order even after a case has been resolved. *See Autin v. Goetz*, 524 S.W.3d 617 (Tenn. Ct. App. 2017).

Accordingly, the trial court's finding that intervention would cause undue delay is illogical under the circumstances; rather, "[w]e discern no undue delay or prejudice to the adjudication of the rights of the original parties if intervention is permitted[.]" *Kocher*, 546 S.W.3d at 84–85. The denial of Appellant's motions to intervene is therefore reversed.[10] *Id.*

---

[10] Appellees also assert that the trial court's error in denying Appellant's motions for intervention was harmless because Appellant was allowed to brief the issue of whether certain documents should remain sealed and submit proposed findings of fact and conclusions of law on same. Appellees argue that in effect, Appellant was allowed to intervene. While this may be true, we nonetheless take this opportunity to clarify that under these circumstances Appellant's petitions for intervention should have been granted initially.

- 10 -

## B. The Sealed Records

Appellant next challenges the trial court's decision to leave several documents under seal. A trial court's decision to seal its record is reviewed for an abuse of discretion. *Kocher v. Bearden*, No. W2017-02519-COA-R3-CV, 2018 WL 6423030, at *10 (Tenn. Ct. App. Dec. 5, 2018) (citing *Ballard*, 924 S.W.2d at 659). A trial court abuses its discretion when it applies an incorrect legal standard or reaches a decision which is against logic or reasoning and which causes an injustice to the complaining party. *Doe ex rel. Doe v. Roman Catholic Diocese of Nashville*, 154 S.W.3d 22, 42 (Tenn. 2005) (citing *Clinard v. Blackwood*, 46 S.W.3d 177, 182 (Tenn. 2001)); *see also Gooding v. Gooding*, 477 S.W.3d 774, 779 (Tenn. Ct. App. 2015) ("When the courts refer to an abuse of discretion, they are simply saying that either the discretion reposed in the lower court judge was not exercised in conformity with applicable guidelines or the decision was plainly against the logic and effect of the facts before the court.") (internal quotations omitted). Nonetheless, "[t]he abuse of discretion standard does not . . . immunize a lower court's decision from any meaningful appellate scrutiny." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010) (citing *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 211 (Tenn. Ct. App. 2002)). Importantly, although we review a trial court's order to seal its records for an abuse of discretion, "'[i]n light of the important rights involved, the . . . decision is not accorded' the deference that standard normally brings." *Doe by Doe v. Brentwood Acad., Inc.*, 578 S.W.3d 50, 53 (Tenn. Ct. App. 2018) (quoting *Shane Group, Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 306 (6th Cir. 2016)).

The discretionary decision at the center of this case is the trial court's finding that several documents in the court's record should remain under seal because the documents contain financial information and references to minor children. Appellant's argument regarding how the trial court abused its discretion is two-fold. First, Appellant asserts that the trial court applied an incorrect legal standard in determining whether the court records should remain sealed. Specifically, Appellant asserts that the trial court analyzed whether "good cause" exists to seal the records, when the correct standard is whether the seal serves a "compelling interest" and is narrowly tailored to that interest. Insofar as the trial court applied a less stringent legal standard than required, Appellant avers that the trial court abused its discretion. *See Doe ex rel. Doe*, 154 S.W.3d at 42 ("A trial court abuses its discretion when it applies an incorrect legal standard[.]"). Appellees, on the other hand, argue that "good cause" is the correct standard pursuant to our Supreme Court's holding in *Ballard v. Herzke*, 924 S.W.2d 652 (Tenn. 1996). Appellees alternatively contend that even if a "compelling interest" is the correct legal standard for sealing a court record, the trial court's error in discussing "good cause" in its order is harmless because the trial court ultimately concluded, at the end of the order, that several "compelling interests" are furthered by the seal. The second prong of Appellant's argument is that even if the trial court applied the correct legal standard, it nonetheless erred in concluding that general financial privacy and the involvement of minor children constitute sufficient reasons to

- 11 -

seal court records from public view.

We turn first to the dispute over the appropriate legal standard. "The Tennessee Constitution expressly provides that 'all courts shall be open.'" *Kocher*, 546 S.W.3d at 85 (quoting Tenn. Const. Art. I, § 17) (footnote omitted). The Constitutional mandate for open courts extends to a court's judicial records. *Id.* Accordingly, we "'recognize a general right to inspect and copy public records and documents, including judicial records and documents.'" *Id.* (quoting *In re NHC–Nashville Fire Litig.*, 293 S.W.3d 547, 560 (Tenn. Ct. App. 2008)). We have previously explained the "origins and reasons for the public right to access judicial records:"

> The public's right to access provides public scrutiny over the court system which serves to (1) promote community respect for the rule of law, (2) provide a check on the activities of judges and litigants, and (3) foster more accurate fact finding. The right of access to judicial proceedings and records was originally justified by common law traditions predating the enactment of the federal Constitution. The common law right of access establishes that court files and documents should be open, unless the court finds that the records are being used for improper purposes. Moreover, the First Amendment to the Constitution presumes that there is a right of access to proceedings and documents which have historically been open to the public and which disclosure would serve a significant role in the functioning of the process.

*In re NHC*, 293 S.W.3d at 560–61 (internal quotations omitted). As such, the public's right to inspect judicial records has been recognized in Tennessee "for more than a century[,]" and we remain cognizant of the "presumption of openness" for such records. *Id.* (quoting *Tennessean v. Metro Gov't of Nashville*, 485 S.W.3d 857, 864 (Tenn. 2016)); *see also Baugh v. United Parcel Serv., Inc.*, No. M2012-00197-COA-R3-CV, 2012 WL 6697384, at *6 (Tenn. Ct. App. Dec. 21, 2012) ("Tennessee courts have long recognized that judicial proceedings are presumptively open . . . [t]he openness of judicial proceedings extends to judicial records."); *Huskey*, 982 S.W.2d at 362 (citing *Ballard*, 924 S.W.2d at 661) ("[T]he Tennessee Supreme Court has recognized a qualified right of the public, founded in common law and the First Amendment to the United States Constitution, to attend judicial proceedings and to examine the documents generated in those proceedings.").

Nonetheless, "the common law right of access to judicial records is not absolute." *In re NHC*, 293 S.W.3d at 561 (citing *Nixon v. Warner Commc'ns., Inc.*, 435 U.S. 589, 98 S.Ct. 1306, 1316, 55 L.Ed.2d 570 (1978)). Every court possesses "inherent supervisory authority over its own records and files" such that access may be denied under some circumstances, including when access would "promot[e] public scandal or publication of libelous statements." *Kocher*, 546 S.W.3d at 86 (quoting *In re Lineweaver*, 343 S.W.3d

401, 413 (Tenn. Ct. App. 2010)). As such, trial courts must balance the privacy of litigants against the public's right to access the courts and their records; however, "any restriction on public access to judicial proceedings and documents 'must be narrowly tailored to accommodate the competing interest without duly impeding the flow of information.'" *Id.* (quoting *Huskey*, 982 S.W.2d at 363). "This balance must be carefully struck." *Huskey*, 982 S.W.2d at 363.

One method by which courts strike this delicate balance is through protective orders. *See Kocher*, 546 S.W.3d at 86 (citing *Ballard*, 924 S.W.2d at 658) ("Protective orders strike a balance between [] public and private concerns."). Protective orders can take different forms; for example, as in the case now before us, a court may enter an order providing that pleadings, court orders, trial transcripts, etc., shall be filed "under seal."[11] In so ordering, a trial court "relies on its inherent authority to seal its record[.]" *Bottorff v. Bottorff*, No. M2019-00676-COA-R3-CV, 2020 WL 2764414, at *8 (Tenn. Ct. App. May 27, 2020) (citing *Kocher*, 546 S.W.3d at 85 n.9). However, because of the long-standing presumption of public access to court records, a seal on such records must be "essential to preserve higher values and narrowly tailored to serve [a compelling] interest." *Id.* at *9; *see also Kocher*, 2018 WL 6423030, at *13 (same); *see also Brentwood Acad.*, 578 S.W.3d at 53 ("Unlike discovery information merely exchanged between the parties, the public has a strong interest in obtaining the information contained in the court record.").

Distinctively, when dealing with discovery documents, a court may enter a protective order pursuant to Tennessee Rule of Civil Procedure 26.03.[12] *See Bottorff*, 2020

---

[11] *See In re NHC*, 293 S.W.3d at 561 n.7 ("Traditionally, a 'seal' is '[a]n impression upon wax, wafer, or some other tenacious substance capable of being impressed.' BLACK'S LAW DICTIONARY 1348 (6th ed. 1990). 'Sealing of records' means 'to close by any kind of fastening that must be broken before access can be obtained.' *Id.* at 1349. In modern times, this often means that the documents are kept in an opaque covering, taped shut, in the court clerk's file, and designated as 'under seal.'").

[12] Rule 26.03 provides:

> Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

> (1) that the discovery not be had; (2) that the discovery may be had only on specified terms and conditions, including a designation of the time or place; (3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery; (4) that certain matters not be inquired into, or that the scope of the discovery be limited to certain matters; (5) that discovery be conducted with no one present except persons designated by the court; (6) that a deposition after being sealed be opened only by order of the court; (7) that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way; (8) that the

- 13 -

WL 2764414, at *4 (explaining that records produced in response to discovery requests are properly sealed pursuant to Rule 26.03). While Rule 26.03 is applicable to discovery documents, rather than pleadings or court orders unrelated to discovery, a "trial court's inherent supervisory authority over its own records and files . . . is the genesis of Rule 26.03[.]" *In re NHC*, 293 S.W.3d at 561.

Accordingly, a trial court has different tools at its disposal to balance the privacy of litigants and the public's presumptive right of access to court records. However, Tennessee case law reflects that the applicable legal standard for shielding documents from public view may vary from case to case depending upon the type of documents and information sought to be kept confidential. *See, e.g.*, *Bottorff*, 2020 WL 2764414, at *3 (noting that Tennessee courts have developed different modes of analysis for determining whether a trial court may order different categories of documents sealed); *Brentwood Acad.*, 578 S.W.3d at 56 (considering whether plaintiff demonstrated a "compelling reason" for request to seal portions of court order and transcript); *In re NHC*, 293 S.W.3d at 571 ("In the context of a protective order on unfiled discovery, the good cause standard generally should be considered to be satisfied as long as the parties can articulate a legitimate need for privacy or confidentiality."); *Ballard*, 924 S.W.2d at 658 (addressing raw discovery responses filed with a court and holding that "[t]o establish 'good cause' under [Rule 26.03], the moving party must show that disclosure will result in a clearly defined injury to the party seeking closure").

Here, Appellees maintain that *Ballard* is the seminal Tennessee case on all protective orders, while Appellant argues that *Ballard* is narrower than Appellees urge and, consequently, inapplicable. Appellant posits that the more persuasive authority is a set of cases recently decided by this Court, *Kocher v. Bearden*, 546 S.W.3d 78 (Tenn. Ct. App. 2017) ("*Kocher I*"), and *Kocher v. Bearden*, No. W2017-02519-COA-R3-CV, 2018 WL 6423030 (Tenn. Ct. App. Dec. 5, 2018) ("*Kocher II*"), as well as *Bottorff v. Bottorff*, No. M2019-00676-COA-R3-CV, 2020 WL 2764414, at *8 (Tenn. Ct. App. May 27, 2020). Because this dispute turns on the parties' interpretation of these cases, they bear examination. We turn first to *Ballard*.

In *Ballard*, the plaintiffs brought suit against several defendants over defendants' alleged mismanagement of a retirement community. 924 S.W.2d 652. Large scale discovery ensued, and vast amounts of financial information were disclosed. *Id.* at 655. The trial court *sua sponte* issued a protective order pursuant to Rule 26.03, providing that all discovery responses should be filed with the court and held under seal.[13] *Id. The*

---

parties simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court.

[13] As we have previously explained:

*Tennessean* later sought to intervene in the action and unseal the documents. *Id.* at 656. The trial court eventually modified the protective order "so that only the discovery materials relating to the defendants' personal income and personal taxes would remain sealed." *Id.* The defendants sought an extraordinary appeal to this Court challenging the trial court's action. *Id.* Upon review, we concluded that the trial court abused its discretion in modifying the protective order and that the sealed discovery responses were not subject to the Tennessee Public Records Act. *Id.* at 656–57. Our Supreme Court then granted permission for appeal to clarify the issues surrounding "intervention, discovery, and public records." *Id.* at 657.

First, the Court concluded that *The Tennessean* should have been allowed to intervene for purposes of challenging the blanket protective order. *Id.* at 657–58. The Court then turned to "the standards governing the issuance of a protective order, and those governing modification of an already-existing protective order." *Id.* at 658. The Court explained that under Rule 26.03, a trial court has the authority, for good cause shown, to enter protective orders requiring discovery to be filed under seal. *Id.* These orders are meant to "aid the progression of litigation and to facilitate settlements[,]" while striking a balance between "public and private concerns." *Id.* A factor test for "good cause" pursuant to Rule 26.03 was articulated:

> Factors in the balance weighing against a finding of good cause include: (1) the party benefitting from the protective order is a public entity or official; (2) the information sought to be sealed relates to a matter of public concern; and (3) the information sought to be sealed is relevant to other litigation and sharing it would promote fairness and efficiency.
>
> On the other hand, factors in the balance weighing in favor of a finding of good cause include: (1) the litigation involves private litigants; (2) the litigation concerns matters of private concern or of little legitimate public interest; and (3) disclosure would result in serious embarrassment or other specific harm. *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34–36, 104 S.Ct. 2199, 2208–09, 81 L.Ed.2d 17 (1984)[.]

*Id.* at 658–59 (some citations omitted).

---

[A]t the time the *Ballard* opinion was issued, Rule 5.05 of the Tennessee Rules of Civil Procedure required that, in the absence of a court order or local rule to the contrary, all discovery responses were filed with the court. Tenn. R. Civ. P. 5.05. *Ballard* arose out of Shelby County, which had no local rule exempting discovery responses from the filing requirement, and thus centered on discovery responses that were filed with the court.

*In re NHC*, 293 S.W.3d at 562.

The Court also clarified the standard for modification of an already-existing protective order, explaining that the same initial factors apply, as well as the extent to which the parties have relied on the protective order in producing discovery. *Id.* at 659.

Applying the foregoing to the facts of the case, the *Ballard* Court concluded that the intermediate court erred in reversing the trial court's judgment modifying the protective order. *Id.* at 660–61. The Court explained that because the trial court's original order was a *sua sponte* blanket protective order "meant to facilitate discovery," the order was "peculiarly subject to modification." *Id.* The Court also noted that the trial court balanced the interests at issue by leaving some information under seal, and recognized that the trial court considered several of the pertinent factors in making its ruling. *Id.* The trial court therefore did not abuse its discretion in modifying the order, and the trial court's judgment was reinstated. *Id.* at 661.

The difficulty in applying *Ballard* to the case at bar is that *Ballard* deals exclusively with documents "meant to facilitate discovery" and was decided within the confines of Rule 26.03, while in this case no discovery was conducted amongst the parties, and the sealed documents are pleadings, court orders, and settlement documents and the attached exhibits.[14] Accordingly, Appellant argues that the more factually and procedurally analogous cases are *Kocher I*, 546 S.W.3d 78, and *Kocher II*, 2018 WL 6423030.

The *Kocher* cases arose out of a personal injury action in which a minor child was struck by a vehicle and injured while riding his bike to school. 546 S.W.3d at 80. The original parties involved were the child's parents (the Kochers) and the driver of the vehicle and his wife (the Beardens). *Id.* These parties reached a settlement regarding the accident without conducting discovery and sought approval of the settlement from the Shelby County Circuit Court. *Id.* On the same day the joint petition for approval of minor settlement was filed, the trial court entered an agreed order sealing the court's file and barring public access to any hearings. *Id.* This order provided that the court was sealing its record due to "the sensitive nature of the evidence" and the "privacy interests of the instant minor and his family." *Id.* Shortly thereafter, the Kochers filed a separate lawsuit against the company that operated the child's school bus ("Durham"), alleging that Durham was responsible for the child's injuries. *Id.* at 81.

Durham removed the lawsuit to federal court. *Id.* During discovery, Durham experienced difficulty obtaining the documents regarding the case between the Kochers and the Beardens due to the trial court's sealing order. *Id.* Durham filed a motion to intervene in the circuit court action in order to gain access to sealed documents that were relevant to the federal action. *Id.* at 81–82. Both the Kochers and the Beardens opposed Durham's efforts. *Id.* at 82. After a hearing, the circuit court found that Durham had not

---

[14] Additionally, B. Ray Jr.'s Affidavit of Will remains under seal.

established a common question of law or fact necessary for permissive intervention under Tenn. R. Civ. P. 24.02 and also refused to modify or rescind the court's sealing order. *Id.* Durham appealed to this Court. *Id.*

In *Kocher I*, we concluded that the trial court erred in refusing to allow Durham to intervene in the case for purposes of challenging the protective order. *Id.* at 84. We also concluded that the reasons for sealing the documents at issue had to be "compelling" in light of the presumptive right of access to the court's judicial records. *Id.* at 86. Importantly, in *Kocher I* we explained why the trial court's reason for sealing its record had to be "compelling" rather than for mere "good cause." Specifically, we distinguished the filed documents at issue in *Kocher I* from documents exchanged or filed strictly for purposes of discovery and sealed under Rule 26.03:

> In *Ballard*, our supreme court discussed the standards governing the issuance of a protective order in the context of discovery pursuant to Tennessee Rule of Civil Procedure 26.03. *See Ballard*, 924 S.W.2d at 658; *In re NHC–Nashville Fire Litig.*, 293 S.W.3d at 563 (recognizing that "*Ballard* dealt exclusively with discovery filed with the court and did not address protective orders on unfiled discovery"). **However, the case before us does not involve a protective order entered for purposes of discovery, as there was no discovery between the Kochers and the Beardens. Instead, the trial court exercised its inherent authority to seal its record.** We find some principles enunciated in *Ballard* to be generally applicable to protective orders like the one entered in this case but do not deem it appropriate to apply *Ballard*'s Rule 26.03 analysis to the protective order before us.

*Id.* at 85 n.9 (emphasis added). However, because the trial court in *Kocher I* failed to articulate the reasons for sealing its record, and because we were not privy to the sealed documents ourselves, we were unable to discern whether a compelling reason for the seal had been established or "determine precisely how or if revelation of the information would prejudice" the proponents of the seal. *Id.* at 87. We remanded the case back to the trial court with directions that the reasons for the seal "be articulated along with findings specific enough that a reviewing court [could] determine whether the closure was properly entered." *Id.* (citing *In re NHC*, 293 S.W.3d at 560). On October 6, 2017 the Tennessee Supreme Court denied permission to appeal *Kocher I*.

On remand, the parties continued to dispute the unsealing of the trial court's record. *Kocher II*, 2018 WL 6423030, at *8. The Kochers in particular remained adamant that Durham not gain access to the documents, asserting that the seal protected their minor child. *Id.* Ultimately, the trial court agreed with the Kochers and entered an order providing that "the contents of [the] file create a compelling interest in maintaining the seal as to the private and confidential information contained therein." *Id.* The basis of the trial

court's decision was that the information in the sealed documents pertained to the Kochers' minor child. *Id.* Durham again appealed to this Court. *Id.*

In *Kocher II*, we reversed the trial court's decision to deny Durham access to the sealed documents, again explaining that "judicial records are presumptively open, [and] that the public has a qualified right to examine documents generated in judicial proceedings." *Id.* at *10. Consequently, we concluded that a "compelling interest" was necessary for the trial court to keep the judicial records under seal and that the closure must be narrowly tailored to serve that compelling interest. *Id.* Drawing on federal cases providing that court documents containing dispositive motions may only be sealed for a compelling reason, we concluded that for sealing purposes, a settlement agreement should be considered dispositive inasmuch as settlement resolves a case on its merits. *Id.* at *12 (collecting cases). Notably, however, we declined to express an opinion on whether "some lower standard would apply if we were in fact considering a motion to unseal a record that contained only a 'nondispositive' motion." *Id.* (footnote omitted).

The *Kocher II* court then concluded that the trial court abused its discretion in keeping the settlement documents under seal. After reviewing the sealed documents, we found "no overriding or compelling interest that would overcome the presumption of openness or indicate that closure is essential to preserving higher values." *Id.* at *13. While the Kochers had always maintained that the best interests of the minor child were served by sealing the court records, we rejected this argument:

> [I]n *Kocher I*, the appellees simply asserted that the Kochers' child was believed to remain a minor and thus vulnerable to those who might wrongfully prey upon his financial assets from his settlement. However, that concern does not justify the trial court's decision under the circumstances of this case.

*Id.* at *11. The trial court's judgment was reversed and the trial court was ordered to modify its order to allow Durham access to the sealed documents. *Id.*

While *Kocher II* addresses documents that were filed for purposes of a settlement and thus dispositive in that case, we extrapolated on *Kocher II* in *Bottorff v. Bottorff*, 2020 WL 2764414, in which we considered a trial court's order sealing trial transcripts and several exhibits attached thereto. *Id.* at *8. We ultimately concluded that the appropriate analysis was whether a compelling interest supported the seal on those particular documents. *Id.* Specifically, we held that "[b]ecause these sealed documents do not constitute discovery documents, they were not sealed pursuant to the authority of Tennessee Rule of Civil Procedure 26.03" and "as such, we d[id] not deem it appropriate to apply *Ballard*'s Rule 26.03 analysis" to those documents. *Id.* (citing *Kocher I*, 546 S.W.3d at 85 n.9). In so holding, we reiterated that "'[i]n order to maintain public

- 18 -

confidence in our judicial system it is important that litigation remain open and accessible to the public absent a valid reason for keeping information from the public eye.'" *Id.* at \*9 (quoting *Warwick v. Jenkins, Habenicht & Woods, PLLC*, No. E2012-00514-COA-R3-CV, 2013 WL 1788532, at \*1 n.1 (Tenn. Ct. App. Apr. 25, 2013)). We used the same analysis in *Brentwood Academy*, 578 S.W.3d at 53, in which we applied the compelling interest standard when reviewing a trial court's decision to leave unsealed portions of a court order and a hearing transcript.

Returning to the case before us, Appellant urges that *Kocher I* and *Kocher II* are analogous and thus persuasive here because the bulk of the documents at issue, in particular the Consent Agreement and the Final Judgment, are settlement documents that were dispositive in the administration of Decedents' estates. Further, like the parties in *Kocher*, the parties here did not exchange discovery. Nonetheless, Appellees contend that the filed discovery at issue in *Ballard* is comparable to the documents at issue in this case because both sets of documents were filed with the trial court and thus part of the court's public record. As relevant, Appellees assert:

> The *Ballard* decision did not differentiate between discovery responses filed with the trial court and other types of documents filed with the trial court. Rather, the analysis demonstrates that the *Ballard* Court considered the documents filed with the trial court to be judicial records that were sealed by a protective order pursuant to Rule 26.03. [Citations omitted].
>
> Accordingly, judicial records may be sealed pursuant to Rule 26.03. . . . At the very least, *Ballard* clearly contemplates that a trial court may seal judicial records pursuant to Rule 26.03, even if those judicial records are not discovery documents.

Appellees urge that because the discovery responses at issue in *Ballard* were filed with the trial court and were therefore part of the judicial record, *Ballard* stands for the proposition that the "good cause" analysis derived from Rule 26.03 is applicable to the sealing of *any* court records. Appellees also assert that their interpretation of *Ballard* was adopted by this Court in 2008 in *In re NHC–Nashville Fire Litigation*, 293 S.W.3d 547, 560 (Tenn. Ct. App. 2008). In that vein, Appellees argue that *Kocher I* and *II* are inconsistent with *Ballard* and should not be followed.

We are, however, unpersuaded by Appellees and find ourselves aligned with the *Kocher* courts in that Rule 26.03 and *Ballard* are inapposite here. As Appellant aptly argues, many of the sealed documents go straight to the heart of the disposition of Decedents' estates. *See Kocher II*, 2018 WL 6423030, at \*12 ("'[T]he material the parties seek to seal in whole appears in a settlement agreement that the Court must by law review and approve. It is hard to imagine a document more core to the disposition of this matter.

- 19 -

If upon review, the Court rejects the settlement agreement, the matter continues; if it approves the agreement, the matter will be disposed. . . . A showing of compelling reasons to seal the entire document is thus required.'" (quoting *Johnson v. Bank of Am. NA*, No. CV-16-04410-PHX-JJT, 2017 WL 9988653, at *1 (D. Ariz. May 30, 2017))). With regard to the documents that do not qualify as settlement documents, namely the Petition to Set Aside, the Removal Documents, and the Affidavit of Will, under *Bottorff* and *Brentwood Academy* we apply the compelling interest standard insofar as those are presumptively open, court-filed pleadings and documents unrelated to discovery or Rule 26.03. *See Brentwood Acad.*, 578 S.W.3d at 53 ("Unlike discovery information merely exchanged between the parties, the public has a strong interest in obtaining the information contained in the court record.") (internal citation omitted).

Moreover, the cases relied upon by Appellees are narrower than they suggest. *Ballard* dealt exclusively with documents containing discovery responses that were sealed pursuant to Rule 26.03, and nowhere does *Ballard* imply that the "good cause" analysis extends to other types of judicial records, namely, pleadings, court orders, etc. While Appellees are correct that *Ballard* does not distinguish between filed discovery and other types of filed documents, we find this inapposite because no other documents or information were at issue in *Ballard*, so the *Ballard* court simply did not reach this question. *See Ballard*, 924 S.W.2d at 660 (noting that the protective order addressed in that case was strictly meant to "facilitate discovery"). As such, *Ballard* is quite clearly limited to documents produced in discovery, notwithstanding the fact that in that particular case, the documents were also part of the court record and, therefore, public records. *Id.* at 662. Appellees' interpretation of *Ballard* extends its holding beyond the circumstances of that specific case.

We are likewise unpersuaded that *In re NHC* buttresses Appellees' reading of *Ballard* because *In re NHC* was also decided within the ambit of discovery documents. 293 S.W.3d at 561–62. Specifically, the *In re NHC* court considered two types of court orders: (1) a blanket protective order over unfiled discovery exchanged between the parties; and (2) an order providing that discovery documents salient to an issue of public health and safety and filed in conjunction with dispositive motions would be filed under seal, and then considered for public disclosure. *Id.* Contrary to Appellees' argument, neither *Ballard* nor *In re NHC* address the issue now squarely before us, to wit, sealing a court record that contains no discovery whatsoever. Consequently, while some of the underlying principles discussed in *Ballard* and *In re NHC* are undoubtedly instructive here,[15] we disagree with Appellees that these cases are more analogous than *Kocher I*, *Kocher II*, and *Bottorff*.

---

[15] We noted in both *Kocher* appeals that "some principles enunciated in *Ballard* [are] generally applicable to protective orders like the one entered in this case[.]" *Kocher I*, 546 S.W.3d at 85 n.9; *Kocher II*, 2018 WL 6423030, at *5 n.6. We also draw on principles from *In re NHC* in *Kocher II* and in *Bottorff*.

We also reject Appellees' argument that the *Kocher* cases are antithetical to *Ballard* or *In re NHC* and should be ignored; rather, the *Kocher* courts simply recognized that *Ballard* presented a factually and procedurally different scenario. *See Kocher I*, 546 S.W.3d at 85 n.9. Like the *Kocher* courts, we do not find our conclusion at odds with *Ballard* inasmuch as *Ballard* is inapplicable in the present case. This conclusion is also supported by the fact that our Supreme Court denied review of *Kocher I* on October 6, 2017.[16]

To summarize, Tennessee courts have developed different avenues of analysis for sealing documents from public view depending upon the particular documents and information at issue.[17] Because it is undisputed that in the present case discovery was not

---

[16] To be clear, we recognize the factual differences between *Kocher I* and *II* and the present case, in particular that the party seeking access to sealed documents in those cases did so in order to defend itself in a separate lawsuit initiated by the Kochers. Nonetheless, we disagree with Appellees that this difference is fatal to Appellant's reliance on the *Kocher* cases. The burden for unsealing a court record does not fall to the party seeking access to the record; rather, the proponent of the seal must demonstrate that the seal is necessary to preserve a compelling interest. *See Baugh*, 2012 WL 6697384, at *7 ("[T]he reasons for sealing judicial records must be 'compelling', with the burden for demonstrating the compelling reason placed on the party seeking to prevent public access to the records.") (citing *In re NHC*, 293 S.W.3d at 567).

[17] We note here that the confusion surrounding this legal standard is understandable; as a whole, Tennessee case law addressing protective orders is not a model of clarity. For example, in at least one Tennessee case, we applied both a "good cause" and a "compelling interests" analysis when considering a trial court's decision to seal nondiscovery documents. *See Raines Bros., Inc. v. Chitwood*, No. E2015-01430-COA-R3-CV, 2016 WL 3090902, at *10–11 (Tenn. Ct. App. May 24, 2016) (citing both the good cause analysis and the compelling interests standard when reviewing a trial court's decision to seal documents filed in connection with a motion for attorney's fees). Nonetheless, because we conclude that the questions *sub judice* are answered by *Kocher I*, *Kocher II*, *Bottorff*, and *Brentwood Academy*, we need not address any inconsistencies in authority here. Moreover, many other jurisdictions apply the compelling interests, or a similar standard, when considering whether to seal public court records and a conclusion that good cause is the proper standard would be a departure from the weight of authority. *See, e.g.*, *Vergara v. Mission Capital Advisors, LLC*, 187 A.D.3d 495, 133 N.Y.S.3d 243 (1st Dep't. 2020) ("We recognize that it may be easier for the parties and the motion court to seal an entire court record, rather than make a determination on a document by document basis about sealing, but administrative convenience is not a compelling reason to justify sealing."); *Paxton v. Cty. of Dallas*, 509 S.W.3d 247, 258 (Tex. 2017) ("Neither *a* reason nor even a *good* reason would be sufficient to rebut the public-disclosure presumption. The reason must be 'compelling.'") (emphasis in original); *Circuit Court of Eighth Judicial Dist. v. Lee Newspapers*, 332 P.3d 523, 531 (Wyo. 2014) ("[T]he presumption of openness may only be overcome by a demonstration that there is a compelling interest which makes closure essential to preserve higher values, and that any closure is narrowly tailored to serve that compelling interest."); *Associated Press v. State*, 888 A.2d 1236, 1246 (N.H. 2005) ("In New Hampshire, the right of access may be overcome when a sufficiently compelling interest for nondisclosure is identified."); *Rufer v. Abbott Labs.*, 114 P.3d 1182, 1192 (Wash. 2005) ("We hold that any records that were filed with the court in anticipation of a court decision (dispositive or not) should be sealed or continue to be sealed only when the court determines . . . that there is a compelling interest which overrides the public's right to the open administration of justice."); *Goldberg v. Johnson*, 485 So.2d 1386 (Fla. Dist. Ct. App. 1986) (holding that in order to seal

- 21 -

conducted by the parties and all of the sealed documents were entered into the presumptively open, public court record, we conclude that the reasons for sealing the records in this case must be compelling. The presumption of openness regarding these records is "strong[,]" *Brentwood Acad.*, 578 S.W.3d at 53, and "'may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" *Kocher I*, 546 S.W.3d at 86.

Bearing this standard in mind, we turn next to whether the trial court in fact applied the correct standard. The interpretation of a trial court's order is a question of law we review de novo. *Byrnes v. Byrnes*, 390 S.W.3d 269, 277 (Tenn. Ct. App. 2012); *see also Kocher II*, 2018 WL 6423030, at *9 ("When interpreting a trial court's order, 'we ascertain the intent of the court, and, if possible, make the order in harmony with the entire record in the case and to be such as ought to have been rendered.'" (quoting *Stephens v. Home Depot U.S.A., Inc.*, 529 S.W.3d 63, 73 (Tenn. Ct. App. 2016))). "The determinative factor is the intention of the court as collected from all parts of the judgment." *Stephens*, 529 S.W.3d at 73.

According to Appellant, the trial court applied an incorrect legal standard by discussing *Ballard* and whether "good cause" supports the current seal on the court's records. Appellees counter that because the trial court also reached the conclusion that various compelling interests support the seal, any discussion of the *Ballard* factors by the trial court is harmless error. Here, we find ourselves in agreement with Appellees. The trial court found the purported reasons for the sealing order compelling; in pertinent part, the trial court explained:

> The Court further concludes that there are compelling reasons exist [sic] to keep certain documents under seal. Those documents include the Affidavit of Will, the Petition to Set Aside, the [Consent Agreement and Final Judgment], and [the Removal Documents]. The Court concludes that the privacy interests at stake in this estate are paramount and compelling in this case. Although [Decedents'] Will[s] [were] submitted to probate, the disposition of the vast majority of [Decedents'] assets were disposed of through the [Trusts] that [were] created during [their] lifetime[s]. Had [Decedents] wished to make the disposition of [their] assets public, [they]

judicial records, courts must determine that there are compelling reasons to do so and the reasons must be specifically set forth); *but see Cline v. Spectrum Care Acad., Inc.*, 316 S.W.3d 320, 325 (Ky. Ct. App. 2010) ("Kentucky courts utilize a sliding scale to determine how much presumptive weight of access should be given to a record or piece of evidence. . . . Documents used to determine a litigant's substantive rights receive the greatest weight and can be sealed only for the most compelling of reasons while documents having little bearing on a litigant's rights receive little weight.").

would have done so through probate. Instead, [Decedents] chose to shield the disposition of [their] substantial assets from public view via the [] Trust[s]. The records at issue in this estate detail large sums of money, as well as the recipients of those sums. These privacy interests at stake, including the general privacy of the parties, the protection of the minor children at issue, and the interests of the estate[s] being closed without further interference by those holding no interest in [Decedents' estates] or the [] Trust[s], offer a compelling reason that outweigh[s] the needs of the public in general. Accordingly, the compelling reason favors sealing of the record in this case. Furthermore, the Court has not found any authority mandating the openness of the record.

Based on the foregoing, we conclude that the trial court applied the correct legal standard. Although *Ballard* and its factor test are not dispositive in the present case, the trial court's discussion of the "good cause" factors does not amount to reversible error. Indeed, while not controlling, some of the principles underlying these factors are relevant. *See Kocher I*, 546 S.W.3d at 85 n.9 ("[S]ome principles enunciated in *Ballard* [are] generally applicable to protective orders like the one entered in this case[.]"). Taking the trial court's order as a whole and giving effect to every word, as we are required to, we conclude that the order sufficiently reflects that the trial court ultimately considered the correct legal standard. Consequently, the trial court did not abuse its discretion in this regard.

Our inquiry does not end here, however, as Appellant asserts that even if the trial court did not abuse its discretion by applying an incorrect legal standard, it nonetheless abused its discretion in ordering that several documents in its record remain sealed. *See Doe ex rel. Doe*, 154 S.W.3d at 42 (explaining that a trial court also abuses its discretion in making a decision "which is against logic or reasoning and which causes an injustice to the complaining party"); *see also Kocher II*, 2018 WL 6423030, at *10 ("When the courts refer to an abuse of discretion, they are simply saying that either the discretion reposed in the lower court judge was not exercised in conformity with applicable guidelines or the decision was plainly against the logic and effect of the facts before the court."). We remain mindful that while the trial court's decision to seal its court records is reviewed for an abuse of discretion, "'[i]n light of the important rights involved, the . . . decision is not accorded' the deference that standard normally brings." *Brentwood Acad.*, 578 S.W.3d at 53 (citing *Shane Group*, 825 F.3d at 306; *In re Knoxville News-Sentinel Co.*, 723 F.2d at 476).

The trial court found that the compelling interests justifying the seal in this case are financial privacy and the allegations that the minor grandchildren would be endangered by the sealed information becoming public. Appellant avers that these interests are not compelling and that the trial court's sealing order is not narrowly tailored.

In analyzing this issue, *Brentwood Academy*, 578 S.W.3d 50, is instructive. In that case, which arose out of the alleged assault of a minor, we considered a trial court's decision to leave unsealed certain portions of a court order and a hearing transcript in which medical history of the child's mother, who brought the case on the child's behalf, was discussed. *Id.* at 52. The trial court found that the plaintiff failed to show a compelling reason to seal those particular documents because they did not contain actual medical records, but rather references to the mother's medical information. *Id.* at 53. Plaintiff sought an interlocutory appeal, which was granted. *Id.* On appeal, we applied the "compelling interest" analysis to the plaintiff's request to keep the documents at issue under seal and ultimately concluded that a compelling reason had been established. *Id.* at 54–55. Although we acknowledged the presumptive openness of the trial court's records in that case, we explained that "[b]ecause medical records are universally recognized as confidential and they are exempted from the definition of public records, medical records and the information contained therein do not lose their confidentiality merely because a party files another's records in a civil action or reads from them during a legal proceeding." *Id.* at 55 (citing *Stevens ex rel. Stevens v. Hickman Cmty. Health Care Servs., Inc.*, 418 S.W.3d 547, 558 (Tenn. 2013)). We also noted that the mother's only claim for damages pertained to reimbursement of tuition and had nothing to do with any injury to herself. *Id.* Consequently, the particular information the plaintiff wanted kept confidential was attenuated from the merits of the case, and we held that in "determining whether records or information in a court file should be sealed, one of the important factors is whether the court relied on such information in reaching its decisions." *Id.* (citing *Shane Group*, 825 F.3d at 305). We also explained that "the redaction of only those few lines which reveal the confidential information is narrowly tailored to serve [the] compelling reason" posited by the plaintiff. *Id.* at 56. The trial court's ruling as it related to the plaintiff's medical information in the court order and transcript at issue was therefore reversed. Accordingly, *Brentwood Academy* reflects that court records may be appropriate for sealing if they contain information generally regarded as confidential (i.e. medical information) and unrelated to the merits of the case.

We are also again guided by *Kocher I* and *Kocher II*; indeed, in those cases we rejected the argument that a minor's involvement in a lawsuit amounts to a compelling interest sufficient to shield a court record from public view. While the proponents of the seal in *Kocher I* and *Kocher II* argued that the sealed documents protected a "vulnerable minor" from individuals who "might wrongfully exploit information about his settlement[,]" we concluded that this unsubstantiated concern "would [not] overcome the presumption of openness or indicate that closure is essential to preserving higher values." 546 S.W.3d at 87; 2018 WL 6423030, at *13. Without demonstrating something above and beyond the fact that the case centered on a minor, the compelling interest standard was not reached.

Having reviewed the record, including the documents placed under seal by the trial

- 24 -

court, and the pertinent legal authorities, we conclude that the trial court abused its discretion in leaving the documents at issue under seal. In the present case, the trial court found and the Appellees insist that the sealed documents expose B. Ray Jr.'s and Juanne's minor grandchildren to potential danger and that the parties' interest in financial privacy outweighs the presumption of openness attached to the court's record. Nonetheless, the trial court failed to articulate any specific concerns regarding the minors, instead finding that "protection of the minor children at issue" amounts to a compelling interest. *Kocher II*, however, suggests that unsubstantiated claims regarding the safety of a minor do not amount to a compelling interest sufficient to justify the sealing of a court's record. Indeed, a specific harm to which the grandchildren might be subjected should the documents be disclosed is unclear, and Appellees have never offered more than speculation as to how disclosure might affect the minor grandchildren. Nor do Appellees cite any case law supporting their contention that the involvement of minor children is a compelling interest sufficient to seal a court's record.

Appellees also cite no authority for their contention that general financial privacy interests and Decedents' substantial wealth are sufficient compelling interests to seal the court records, nor do we read the salient Tennessee cases as supportive of this position. While Appellees assert that "[n]o Tennessee authority has specifically stated that financial privacy cannot be a compelling reason to seal judicial records[,]" we are unpersuaded by this argument. Indeed, we read the cases discussed herein to mean that the "compelling interest" standard demands more than broad, vague allusions to general privacy interests or potential harm. *See, e.g.*, *Bottorff*, 2020 WL 2764414, at *9–10 (trial court's finding that sealing order would prevent "harm and embarrassment" was insufficient to seal trial transcripts and exhibits); *Brentwood Acad.*, 578 S.W.3d at 54–55 (discussing that medical information, the information at issue in that case, is "universally recognized as confidential"); *Paxton*, 509 S.W.3d at 258 ("A need is 'compelling' if it is so great that irreparable harm or injustice would result if it is not met; a reason may be 'compelling' if time is of the essence; . . . and the public interest in maintaining confidentiality of information may be 'compelling' if the interest advanced by the promise of confidentiality would be eviscerated by compelled disclosure.") (some quotations omitted) (footnotes omitted). Further, unlike the sealed documents in *Brentwood Academy*, which were unrelated to the merits of the case and involved redactions of the sensitive information, the sealed records at issue here are scores of documents central to the case. *See id.*, 578 S.W.3d at 55 ("[I]f the information is both confidential and was not relied on by the court to make a judicial decision, then the public's right to such information is greatly diminished.").

Finally, we cannot agree that Decedents' decision to dispose of their estates through trusts amounts to a compelling reason to seal the court's records, as this finding implies that parties may choose to have the records of their estate actions entirely sealed. It is well-settled, however, that a trial court should not seal its record simply because a party requests it be so. *See Kocher I*, 546 S.W.3d at 86 (quoting *Warwick*, 2013 WL 1788532, at *1 n.1)

- 25 -

("This Court has 'caution[ed] trial courts not to seal records simply because a party requests this be done.'").

Appellees bore a heavy burden in the trial court, and the record does not reflect that they have articulated a clear, cogent example of how disclosure of the sealed documents could harm them; on the contrary, the information in the sealed portions of the record is no different from or more embarrassing than a typical estate dispute, save for the fact that a substantial amount of money is at issue.[18] In this sense, the trial court's decision has the effect of carving out an exception to the presumptive openness of court records for wealthy litigants. This result is plainly against sound logic and reasoning. *Kocher II*, 2018 WL 6423030, at \*10. Although the documents contain information that the parties understandably might prefer be kept confidential, this is true for most if not all litigation involving interfamily conflict and does not amount to an interest compelling enough to outweigh the strong presumption in favor of openness regarding the trial court's records. We share Appellant's view that such a holding would result in litigants attempting to seal any judicial record containing general financial information or information that could be considered embarrassing to the parties. As Appellant aptly notes in her brief, "[a] substantial number of (if not most) probate proceedings involve money and minors. If the mere involvement of money and minors were sufficient to seal probate files, then virtually all probate records would be hidden from the public. Tennessee law requires more."[19] We agree.

## IV. CONCLUSION

The Appellees did not establish in the trial court a compelling interest justifying the seal on the Consent Agreement and the Final Judgment, the Petition to Set Aside, the Removal Documents, and the Affidavit of Will. Moreover, minimal if any efforts were taken to ensure the seal on these documents was narrowly tailored as required. The trial court's decision was therefore plainly against logic, reasoning, and the effect of the facts before the court. This is especially true in light of the fact that when reviewing a trial court's decision to seal its record, the "decision is not accorded the deference that [the abuse of discretion] standard normally brings." *Brentwood Acad.*, 578 S.W.3d at 53 (citing *Shane Group*, 825 F.3d at 306). In light of the significant and well-established interests underpinning the presumptive openness of court records, the trial court's decision caused prejudice not only to the complaining party but also the public at large. Accordingly, the

---

[18] It is also important to note that while the allegations contained in the Petition to Set Aside are of a sensitive nature, an unsealed copy of the Petition to Set Aside is contained in the record and has already been made public by virtue of a different proceeding.

[19] In addition to probate matters, a decision in favor of Appellees would significantly impact domestic relations cases; indeed, if disputes over money and issues tangentially involving minor children constitute compelling interests sufficient to seal a court record, few divorces would ever be public in Tennessee.

- 26 -

trial court's decision to place the above-listed documents under seal is reversed, and the case remanded for further proceedings consistent with this opinion. Costs on appeal are taxed to the appellees, Catherine Vance Thompson, Rebekah Thompson-Palmer, and Adella Sands Thompson.

 

 

_____
KRISTI M. DAVIS, JUDGE